THOMAS KENNEDY, Plaintiff-Appellant, *v.* HOSPITAL SERVICE CORPORATION, Defendant-Appellee.

First District (4th Division)   No. 83—238

Opinion filed September 29, 1983.

John T. Kennedy, of Highland Park, for appellant.

Michael I. Hyman, of Chicago (Peter G. McAllen and Donald J. Duffy, of Kirkland & Ellis, of counsel), for appellee.

PRESIDING JUSTICE ROMITI delivered the opinion of the court:

Plaintiff-appellant, Thomas Kennedy, appeals from an order of the circuit court of Cook County declaring that defendant-appellee, Health Care Service Corporation (sued as Hospital Service Corporation), had properly denied his claim for payment of hospitalization benefits for that part of a hospital stay exceeding a 120-day limitation contained in the Health Services Plan Certificate (the contract) issued to plaintiff by defendant. On appeal plaintiff contends (1) that there exists an ambiguity in the contract with respect to the existence of any limitation on the duration of hospitalization coverage and that such ambiguity should be resolved in his favor by a determination that no such limitation exists; (2) that in any event any such limitation was waived when defendant paid for a 60-day hospitalization period which had occurred after plaintiff had previously been hospitalized for more than 120 days.

We affirm.

The evidence at trial established the following: Plaintiff was hospi-

talized at Rush Presbyterian-St. Luke's Hospital (Rush) in Chicago from April 12, 1981, until June 6, 1981, and again from June 16, 1981, until August 23, 1981. On August 24, 1981, plaintiff was admitted to a Hartford, Connecticut hospital, the Institute of Living, where he remained at the time this action was brought on March 23, 1982. There is no contention that the nature of plaintiff's ailment was not covered under the contract.

Emma Luster, a supervisor in defendant's direct account department, testified that the bill for plaintiff's first stay at Rush was received August 5, 1981, and was paid August 26, 1981. Her department would compute the available days of coverage by subtracting the number of days for which payment had previously been made from the available days of coverage provided in the contract. The bill for plaintiff's second stay at Rush was not received until December 9, 1981, and was paid December 23, 1981, to cover hospitalization until August 20, 1981, a period which together with the earlier Rush hospitalization was computed to be 120 days. According to Luster no other billing for hospitalization for defendant had been received by her department at that time.

Also testifying at trial was Angelo Fraticola, a supervisor in the defendant's Interplan Bank, which handled billing for members confined to out-of-State hospitals. According to Fraticola when his department was notified by an out-of-State hospital of a patient's admission the computer file would be checked and it would notify them of the number of days of coverage available. His department received notice of plaintiff's Connecticut hospitalization on September 2, 1981, and the next day sent back approval of 60 days' coverage. According to their practice payments were subsequently sent to the Connecticut hospital in October and November of 1981 for the 60 days that had been authorized. Fraticola testified that the computer would contain a history of hospitalization, including dates of admission and discharge. However when further questioned by defendant's attorney he clarified this by saying that although the date of admission would be listed, the date of discharge would only be shown if defendant had made a payment for that period. If no such payment had been made then only an open admission would be contained in the computer entry. He had also testified that his department determined the number of days available to a patient in the same manner as Emma Luster's department (by subtracting days paid from contract days available). However upon further examination by plaintiff's attorney he also testified that "[t]here is something in the computer that they are utilizing the number of days" and that there was a continuing computation of days in

the computer.

The contract itself provides in article I(A)(1) that as to benefits:

"For admissions on and after the Effective Date and during the Benefit Period (see Article VIII(G)), a Beneficiary is entitled to ***

(a) INPATIENT HOSPITAL SERVICE ***."

Article VIII(G) states:

" 'Benefit Period' means the number of days specified in Article VIII(A) for all inpatient service in a Hospital ***."

Article VIII(A) states:

" 'Subscriber' means the individual under 65 years of age who has applied for this Certificate and to whom Blue Cross and Blue Shield have issued an Identification Card bearing the same number as this Certificate."

However article IX states in bold capital letters "EXTENT OF BENEFIT AND RATE." and then provides:

"(A) Benefit Periods

  1. 120 days

  2. 120 days

(B) Percentage Payment by Blue Cross and Blue Shield

  1. Blue Cross 80%

  2. Blue Shield 80%

        * * *."

When plaintiff sought payment of hospitalization charges for the period in Chicago in excess of 120 days and for the period in Connecticut beyond the initial 60 days defendant refused, contending that the contract provided a 120-day limitation (with certain exceptions not relevant to this dispute) and that it had paid for that period and had erroneously paid for an additional 60-day period. Plaintiff then brought this action for a declaratory judgment.

I

■ Plaintiff first contends that the contract provisions we have set out created an ambiguity as to the existence of any limitation on the duration of coverage for hospitalization and that because ambiguities in insurance contracts are to be construed against the insurer (*Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 312 N.E.2d 247), he should be granted hospitalization coverage without any limitation on duration. However we find no such ambiguity. In determining whether a provision of an insurance contract can reasonably be said to be ambiguous, all the provisions of that contract should be read together rather than focusing on an isolated por-

tion. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 429 N.E.2d 1203.) In examining the entire contract at issue here it is clear that the benefit period was clearly labelled and set out in the policy as being 120 days. The cross-reference to the benefit section merely contains a clerical error resulting in a reference to article VIII(A) rather than IX(A). Article VIII(A) obviously has nothing to do with the duration of benefits. Accordingly we find that the trial court correctly held that there was no ambiguity in the contract and that defendant properly limited the hospitalization benefit to 120 days.

■ In his reply brief before this court plaintiff for the first time has contended that even if a limited duration period is contained in the contract, that period is 240 days, because the 120-day period is listed twice in article IX(A). Because plaintiff did not raise this issue below no proof was adduced as to the reason for the dual listing. Having failed to raise the issue in the trial court plaintiff cannot now properly raise it for the first time in a reply brief on appeal, accordingly we will not consider it further. *Consolidated Rail Corp. v. Liberty Mutual Insurance Co.* (1981), 92 Ill. App. 3d 1066, 416 N.E.2d 758; *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417.

II

■ Finally plaintiff contends that because defendant extended coverage for the initial 60 days of his Connecticut hospital stay even though plaintiff had been hospitalized for more than 120 days in Illinois defendant waived the 120-day limitation. But in order to find such a waiver by an insurer it must be shown that the insurer had knowledge of all material facts before it acted. (*Home Indemnity Co. v. Allen* (7th Cir. 1951), 190 F.2d 490; 16C Appleman Insurance Law & Practice sec. 9367 (1981); see *Hartford v. Doubler* (1982), 105 Ill. App. 3d 999, 434 N.E.2d 1189.) In this cause plaintiff's contention depends upon a finding that defendant provided coverage for a period in excess of its contractual limitations with knowledge that plaintiff had exceeded those limitations. However it was the clear testimony of Emma Luster that in evaluating a claim for in-State hospitalization coverage the number of remaining days of coverage would be computed by subtracting days for which payment had already been made from the contractually provided available days. The testimony of Angelo Fraticola was confused, but our summary of that testimony establishes that the trial court could have concluded that this same method was used by his department for out-of-State claims. He testified that a previous period of hospitalization would be included in his

department's computer records only if defendant had already paid out for that period. Thus in this case Emma Luster's department paid for the initial Illinois hospitalization period on August 26, 1981. But the second period of Illinois hospitalization was not paid for until December 23, 1981, as no bill was received until December 9, 1981. When Angelo Fraticola's department received the notice from plaintiff's Connecticut hospital on September 2, 1981, defendant's records would still have showed that he was entitled to additional coverage. Thus when defendant authorized an additional 60 days of hospitalization coverage it did not do so with the knowledge that the 120-day limitation had already been exceeded and defendant cannot be said to have waived that limitation.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.