**BARR CO., formerly known as Barr-Saunders, Inc., Plaintiff,**

**v.**

**SAFECO INSURANCE COMPANY OF AMERICA, Defendant.**

**No. 83 C 2711.**

United States District Court, N.D. Illinois, E.D.

March 15, 1984.

Jonathan B. Gilbert, Pedersen & Houpt, Chicago, Ill., for plaintiff.

Richard S. Wisner, Pretzel & Stouffer, Chtd., Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Before the court is defendant Safeco Insurance Co. of America's motion to dismiss plaintiff Barr Co.'s second amended complaint. Plaintiff brings suit for non-payment on an insurance contract it entered into with defendant in January 1980. In August of 1980 plaintiff notified defendant of a pattern of employee theft it had discovered that caused a loss, it claimed, of $1,800,000 for the years 1977–1980. Plaintiff sought recovery for the portion of these thefts covered by its contract with defendant. After almost three years of supplying information requested by defendant, plaintiff was notified in February 1983 that the $300,000 inventory shortage for 1980 was considered by defendant to be normal and that defendant refused payment for this loss.

Plaintiff, an Illinois corporation with its principal place of business in Illinois, brought suit in Cook County Circuit Court, asking for declaratory relief. Defendant, incorporated and having its principal place of business in Washington, removed the case to this court. Plaintiff subsequently filed a second amended complaint containing four counts. Count I claims breach of contract and asks for $1,000,000 compensatory damages. Count II claims wilful and wanton misconduct and seeks both compensatory and punitive damages. Count III alleges deceptive trade practices and seeks compensatory and punitive damages pursuant to the Illinois Consumer Fraud and Deceptive Trade Practices Act, Ill.Rev.Stat. ch. 121½, §§ 261, et seq. Count IV alleges bad faith, seeking compensatory and punitive damages. Defendant moves to dismiss each count.

## COUNT I

Defendant seeks to dismiss count I for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, moves for a more definite statement pursuant to Rule 12(e). Plaintiff alleges the existence of an insurance contract and a loss covered by that contract. Plaintiff's proof of loss was attached to its original complaint, as was the insurance contract. If plaintiff's loss is indeed covered by the contract, plaintiff can be granted relief. Additionally, the allegations are specific enough for defendant to frame a responsive pleading: all that is required under Rule 12(e). Questions concerning the extent of plaintiff's damage can be answered during discovery or at trial. Defendant's motion to dismiss count I is denied.

## COUNT II

Defendant moves to dismiss count II for a number of reasons. The first, and most interesting basis, is that count II's claim, based upon wilful and wanton misconduct, a tort claim, is barred by section 155 of the Illinois Insurance Code, Ill.Rev.Stat. ch. 73, § 767 (1981). That section reads:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $5,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

The question raised by this statute is whether the remedy it provides precludes all other non-contractual remedies.

A split in authority exists within Illinois appellate courts concerning the effect of section 155 on an insured's tort claims. For example, the 5th Appellate District has held that insureds can bring tort claims against their insurers when the duty to deal fairly and act in good faith has been breached and that punitive damages, when relevant, can be awarded. *See Ledingham v. Blue Cross Plan for Hospital Care*, 29 Ill.App.3d 339, 330 N.E.2d 540 (5th Dist. 1975), *reversed on other grounds*, 64 Ill.2d 338, 1 Ill.Dec. 75, 356 N.E.2d 75 (1976). The court in *Ledingham* drew this conclusion without considering the effect of section 155. In the 1st and 3d Districts the appellate courts have found that section 155 preempts any tort remedies. *See Kinney v. St. Paul Mercury Insurance Co.*, 120 Ill.App.3d 294, 75 Ill.Dec. 911, 458 N.E.2d 79 (1st Dist.1983); *Hamilton v. Safeway Insurance Co.*, 104 Ill.App. 353, 60 Ill.Dec. 97, 432 N.E.2d 996 (1st Dist. 1982); *Tobolt v. Allstate Insurance Co.*, 75 Ill.App.3d 57, 30 Ill.Dec. 824, 393 N.E.2d 1171 (1st Dist.1979); *Debolt v. Mutual of Omaha*, 56 Ill.App.3d 111, 13 Ill.Dec. 656, 371 N.E.2d 373 (3d Dist.1978). The 2d District has held that the statute preempts any award of punitive relief, but not an award of compensatory relief sounding in tort. *See Hoffman v. Allstate Insurance Co.*, 85 Ill.App.3d 631, 40 Ill.Dec. 925, 407 N.E.2d 156 (2d Dist.1980). The 4th District has held that section 155 cannot retroactively

preempt a tort remedy in a case filed before the statute was amended, *see Lynch v. Mid-America Fire & Marine Ins. Co.*, 94 Ill.App.3d 21, 49 Ill.Dec. 567, 418 N.E.2d 421 (4th Dist.1981), but has indicated that it probably can preempt a present action. *See Urfer v. Country Mutual Insurance Co.*, 60 Ill.App.3d 469, 17 Ill.Dec. 744, 376 N.E.2d 1073 (4th Dist.1978).[1]

District courts in this circuit have also split concerning the effect of section 155. Judge Aspen has followed the reasoning of the 1st and 3d Districts in finding that section 155 precludes any tort action based on an insurance contract. *See Aabye v. Security-Connecticut Life Insurance Co.*, No. 83 C 4178 (N.D.Ill. Jan. 11, 1984); *Strader v. Union Hall, Inc.*, 486 F.Supp. 159 (N.D.Ill.1980). Judge Marshall, after examining legislative history not previously discussed by the courts, found that section 155 did not preclude a claim for punitive and compensatory damages sounding in tort. *See Roberts v. Western-Southern Life Ins. Co.*, 568 F.Supp. 536 (N.D.Ill. 1983); *Kelly v. Stratton*, 552 F.Supp. 641 (N.D.Ill.1982). Judge Shadur has found himself bound by the 1st District's finding of preclusion, pursuant to *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and has thus not allowed any tort claims to lie. *See Abbott Laboratories v. Granite State Insurance Co.*, 573 F.Supp. 193 (N.D.Ill.1983); *Commercial Discount Corp. v. King*, 552 F.Supp. 841 (N.D.Ill.1982).

This court has previously followed Judge Aspen in finding that section 155 precludes the filing of any court claim. *See Henke v. Travelers Insurance Co.*, No. 80 C 5068 (N.D.Ill. Oct. 21, 1981). Plaintiff has asked the court to take another look at that ruling in light of the conflicting appellate decisions. The court is willing to do so, but first must determine its proper role under *Erie*. It must decide whether it is bound by decisions of the 1st Appellate District, as Judge Shadur holds, or is free to determine the law it finds would be applied by

---

**1.** For an overview of Illinois law regarding section 155 *see* Durham, Section 767 of the Illinois Insurance Code: Does it Preempt Tort Liability? 16 J.Mar.L.Rev. 471 (1983).

the Illinois Supreme Court, as Judge Marshall proposes.

### A. Erie

The command of *Erie* is simple and direct:

> Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State. And whether the law of the State shall be declared by its Legislature in a statute or its highest court in a decision is not a matter of federal concern. There is no federal general common law.

304 U.S. at 78, 58 S.Ct. at 822. The question that has arisen between the court's colleagues is the role of this court in searching for state law. Judge Shadur has held in a series of opinions that the goal of placing a diversity plaintiff or defendant in as near a position as possible to a state court plaintiff or defendant requires a federal district court to act in exactly the same role as a state trial court. *See e.g. Abbott Laboratories v. Granite State Insurance Co.*, 573 F.Supp. at 196–200 (Appendix); *Commercial Discount Corp. v. King*, 552 F.Supp. 841, 847–52 (N.D.Ill.1982); *Slate Printing Co. v. Metro Envelope Co.*, 532 F.Supp. 431, 434 (N.D.Ill.1982); *National Can Corp. v. Whittaker Corp.*, 505 F.Supp. 147, 148, n. 2 (N.D.Ill.1981). Judge Shadur has called "the essential theory of *Erie*" the duty of a federal court to "decide substantive questions in diversity cases in the same way that a state trial judge counterpart sitting in the same location would." *National Can Corp.*, supra, at 147. This district sits, for relevant purposes here, in Illinois' 1st Appellate District. A circuit court in the 1st District is bound by the 1st District Appellate Court decisions pursuant to Illinois internal choice of law rules. *See People v. Thorpe*, 52 Ill.App.3d 576, 579, 10 Ill.Dec. 351, 354, 367 N.E.2d 960, 963 (2d Dist.1977). Accordingly, Judge Shadur has followed *Tobolt*, supra, the 1st District case holding that section 155 precludes any tort claim, and has found preemption. *See*

*Abbott Laboratories*, supra; *Commercial Discount Corp.*, supra.

Judge Marshall, however, has held that the role of a federal judge, pursuant to *Erie*, is to apply the law that the supreme court of the state would apply. *See Roberts*, supra, *Kelly*, supra. In that approach a federal judge is acting as "a proxy for the entire state court system." 19 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure 89 (1982). The federal courts generally agree with Judge Marshall in following the predictive approach. *See* cases cited in *Roberts*, supra, 568 F.Supp. at 540, n. 5, *but see Commercial Discount*, supra, 552 F.Supp. at 851, n. 9. The 7th Circuit apparently also follows the predictive approach. *See White v. United States*, 680 F.2d 1156, 1161 (7th Cir.1982); *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661 (7th Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980); *Gates Rubber Co. v. USM Corp.*, 508 F.2d 603, 607 (7th Cir. 1975).

■ This court will follow this circuit's approach to ascertainment of state law when the state supreme court has not yet ruled. "The problem of ascertainment arises when, as here, the highest state court has not yet authoritatively addressed the critical issue. Recent opinions of this court make clear that our disposition of such cases must be governed by a prediction of how the state's highest court would decide were it confronted with the problem." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d at 661.

■ Even aside from the precedent within and without this circuit, this court believes the predictive approach is the approach mandated by *Erie* and its progeny. The Supreme Court, in referring to state law, has seemingly referred to a single body of law that can be considered the law of the state. In *Erie*, for example, the court ordered adherence to a state's law "declared by its Legislature in a statute or by its highest court in a decision." 304 U.S. at 78, 58 S.Ct. at 822. Though the court at one time stated that federal courts

were forced to follow any lower court decision not contradicted by the state supreme court, *see Fidelity Trust Co. v. Field*, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (1940), that rule has been dropped in favor of a looser rule designed to allow federal courts to ascertain more truly the law of the state. In *Nolan v. Transocean Air Lines*, 365 U.S. 293, 81 S.Ct. 555, 5 L.Ed.2d 571 (1961), for example, the Supreme Court followed the predictive approach and required, in effect, that the 2d Circuit predict how New York's highest court would predict what California's Supreme Court would decide in light of recent California Supreme Court *dicta*. *See generally*, Note: Ascertainment of State Law in a Federal Diversity Case, 40 Ind.L.J. 541, 549–55 (1965). In *dictum* of its own, the Court clearly stated in a later case that federal courts are concerned with the law of the state and not adherence to any specific court decision.

> [W]hen the application of a federal statute is involved, the decision of a state trial court as to an underlying issue of state law should *a fortiori* not be controlling. This is but an application of the rule of *Erie R. Co. v. Tompkins, supra*, where state law as announced by the highest court of the State is to be followed. This is not a diversity case but the same principle may be applied for the same reasons, *viz;* the underlying substantive rule involved is based on state law and the State's highest court is the best authority on its own law. If there be no decision by that court then federal authorities must apply what they find to be the state law after giving "proper regard" to relevant rulings of other courts of the State.

*Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). Thus, federal courts applying state law pursuant to *Erie* can use appellate court decisions as "datum for ascertaining state law," but are not bound by those decisions. *West v. American Telephone and Telegraph Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). Instead, their role is to ascertain the law of the state and to apply that law to the case. This approach is inconsistent with Judge Shadur's finding that federal district courts must act in the role of the state trial court, bound by the law of their appellate district, even when that law may not be the law of the state. The difficulty in his approach is especially evident when, as here, there is a split among the appellate districts.

In addition, the predictive approach better effectuates the twin aims of *Erie*. In *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the court laid out the twin aims of the *Erie* decision: (1) to ensure that litigation in federal court does not materially differ from litigation in state court; and (2) to discourage forum shopping. In cases brought in state court, litigants will find themselves before a trial judge who is bound by the appellate decisions of the appellate district in which the court sits. Those litigants will also, however, have the opportunity for appellate review by the intermediate appellate court and the Illinois Supreme Court.[2] Those appellate courts will apply what they perceive to be the law of the state in ruling on the claim. If all federal courts under *Erie* were thrust into the role of state trial courts they would be bound by the law of the appellate divisions even when, as here, the law is disputed in other districts and even if an independent determination of state law would lead to a contrary result. No attempt would be made to ascertain the law of the state, as would occur in the state

---

**2.** Judge Shadur has shown the statistical improbability of a case filed in Illinois state court reaching the state appellate courts. *See Abbott Laboratories v. Granite State Insurance Co.,* 573 F.Supp. at 198, n. 5. The probabilities would be enhanced considerably if the cases followed in the study were those actually decided by a state trial court which involved novel issues of state law not yet decided upon by the Illinois Supreme Court. Whatever the statistics, however, each litigant, even at the pleading stage, has some expectation that an appellate court will eventually decide the novel issues of state law in the case consistent with the law of the state. Such an expectation, even if statistically slight, would not exist in federal court if that court were bound by one district's appellate decisions.

appellate courts and supreme court. Thus, the course of litigation would differ in federal as opposed to state courts and litigants would be able to take advantage of that difference in choosing where to bring or whether to remove the case.[3]

A final reason for applying the predictive approach is fairness to litigants. The Constitution gives federal courts, including federal district courts, the judicial power. "The 'judicial power' is the power (and the duty and the necessity) to determine the issues between litigating parties." Corbin, *The Laws of the Several States*, 50 Yale L.J. 762, 773 (1941). In exercising the judicial power in determining issues, courts have judicially weighed precedent, examined trends, balanced equities, discerned and applied applicable principles. Litigants seek and deserve such treatment when they arrive at the steps to any courthouse, whether state or federal.

We must not forget that a litigant has only one day in court. When forced into federal court, that is his only court. If he is denied life, liberty, or property by the narrow syllogistic use of a state judge's worded doctrine, he is not re-stored by the fact that intelligent state judges later refuse to apply that doctrine to other litigants. True, he has had his day in court; but what a court! [4]

*Id.* at 775.

■ The doctrine of *Erie* does not take away the judicial power from federal courts; it merely directs them to apply the law of the state, either declared by the legislature or by the state's highest court. When there is no explicit declaration the court must predict what the state's highest court would declare the law to be. In making that prediction, of course, "a federal court attempting to forecast state law must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d at 663. But while these factors include appellate court decisions, a federal court is not bound by those decisions. Accordingly, this court finds it appropriate under *Erie* to determine the preclusive effect of section 155 by

---

**3.** The recent issuance of Illinois Supreme Court Rule 20 allowing the Seventh Circuit or the Supreme Court to certify questions of law to the Illinois Supreme Court does not change this court's analysis. There is nothing in *Erie* to indicate that the roles of federal district and appellate courts are different. Both are required to apply the predictive approach to ascertain state law. Certification merely supplies federal appellate courts with an additional tool for the ascertainment of state law.

Judge Shadur outlines a neat division of labor among federal courts that, with the addition of certification, he claims mirrors the role of the tri-level state court system. This mirror image, however, is not exact. State appellate courts have the ability to newly ascertain state law even in the face of contrary decisions by appellate courts in their own or other districts. *See generally Village of Northbrook v. Cannon*, 61 Ill.App.3d 315, 322, 18 Ill.Dec. 572, 577, 377 N.E.2d 1208, 1213 (1st Dist.1978). This is especially evident where the appellate courts in a trial court's district have not yet ruled on an issue but a different appellate district has. The trial court—and according to Judge Shadur the federal courts—would be bound by the other appellate district's rule. The trial court's state appellate court would not find itself so bound.

In addition, this court is hard-pressed to discern how a state court's creation of a certification rule, which it at will can reject or discard, effects the essential role of a federal court under *Erie*.

**4.** It is instructive to note the eventual resolution of the issue involved in *Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed.2d 109 (1940). In 1932 the New Jersey legislature passed a law authorizing the formation of Totten trusts. The New Jersey Court of Chancery, a court of standing in equity comparable to an intermediate appellate court in law, found the legislation ambiguous and unconstitutional. The validity of a Totten trust, claimed by Ms. Field, was the issue in a Third Circuit case. The circuit court applied the predictive approach, finding the trust valid. The Supreme Court reversed, finding the court bound by the state court decisions. As stated previously, that rule has been considerably loosened. *See* pp. 252–253, *supra*. What is instructional is that in a later case the New Jersey Supreme Court followed the Third Circuit's opinion in upholding the validity of a Totten trust. *See* 19 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure 83–85 (1982). This of course was of small comfort to Ms. Field.

predicting how the Supreme Court of Illinois would treat that statute.

### B. *Section 155*

This court has previously held that section 155 precludes any tort claim. *See Henke v. Travelers Insurance Co.,* No. 80 C 5086 (N.D.Ill. Oct. 21, 1981). That decision relied upon *Strader v. Union Hall, Inc., supra,* which in turn relied upon *Tobolt* and *Debolt.* The latter two cases were based upon a principle pronounced by the Illinois Supreme Court to the effect that courts should not implement or expand by judicial decree remedies already provided for by the legislature. *See Tobolt, supra,* 75 Ill.App.3d at 69, 30 Ill.Dec. at 832, 393 N.E.2d at 1179; *Debolt, supra,* 56 Ill. App.3d at 116, 13 Ill.Dec. at 60, 370 N.E.2d at 377. That principle was laid out by the Illinois Supreme Court in *Cunningham v. Brown,* 22 Ill.2d 23, 174 N.E.2d 153 (1961), and *Hall v. Gillins,* 13 Ill.2d 26, 147 N.E.2d 352 (1958). In *Cunningham,* for example, the Court was faced with the issue of whether to allow recovery from tavern owners outside the limits of the Illinois Dram Shop Act. The Court held it had no duty "to recognize a remedy when the legislature has already provided such remedy even though the statutory remedy be limited to recoverable damages." *Cunningham, supra,* 22 Ill.2d at 30, 174 N.E.2d at 57.

Applying this principle to section 155, the preemption of compensatory damages in tort seems unlikely. The *Cunningham-Hall* principle requires legislative provision of a similar remedy to that requested. Section 155 allows for reasonable attorneys' fees, costs, and a specified amount not to exceed $5,000. This amount is derived from the recovery allowed under the contract, *see* Ill.Rev.Stat. ch. 73, § 767(a), and a settlement offered by the insurer, *see id.* at § 767(c). It is in no way linked to any injuries incurred as a result of the insurer's refusal to make a payment and cannot be said to be a compensatory remedy. Preemption of compensatory damages is not warranted by the section. *See Hoff-*

*man v. Allstate Insurance Co.,* 85 Ill. App.3d at 635, 40 Ill.Dec. at 928, 407 N.E.2d at 159.

The preemption of punitive damages, however, is another matter. Section 155, as it currently exists, allows for attorneys' fees, costs, and an additional sum not to exceed $5,000, for unreasonable or vexatious delay by an insurance company. On its face this is a punitive remedy and, pursuant to *Cunningham* and *Hall,* would preempt any award of punitive damages. *See id.* Judge Marshall argues against preemption of punitive damages on two grounds. First, he claims that *Wright v. Central DuPage Hospital Association,* 63 Ill.2d 313, 347 N.E.2d 736 (1976), limits *Cunningham* and *Hall* to a finding of preemption only when the remedy created by the legislature was not available before the legislation. *See id.* at 326, 347 N.E.2d at 742. Section 155 was amended in 1977 to allow for the additional punitive payment. Before that only a portion of attorneys' fees were allowed by the section. *See Roberts v. Western-Southern Life Ins. Co.,* 568 F.Supp. at 546. *Ledingham,* which first allowed recoveries in tort for insurance contracts of compensatory or punitive damages was decided in 1975, two years before the additional sum was allowed under the section. Thus, the remedy existed before the amendment made the statute punitive and, Judge Marshall finds, *Cunningham* and *Hall* do not apply.

Section 155, however, was punitive in nature even before the 1977 amendment. That an award of attorneys' fees may deter vexatious behavior is clear. *See Roberts, supra,* at 547. Illinois courts, for example, can consider attorneys' fees as one element of punitive damages. *See Hazelwood v. Illinois Central Gulf RR.,* 114 Ill.App.3d 703, 71 Ill.Dec. 320, 450 N.E.2d 1199 (4th Dist.1983); *Anvil Inv. Ltd. Partnership v. Thornhill Condominiums, Ltd.,* 85 Ill. App.3d 1108, 41 Ill.Dec. 147, 407 N.E.2d 645 (1st Dist.1980). In fact, the chairman of the committee drafting the Illinois Insurance Code in 1937 stated that the committee was aware that some insurance compa-

nies were not as liberal as others in paying claims and stated that section 155 "should prove wholesome in its effect upon companies unreasonably withholding payment of such claims." Havinghurst, *Some Aspects of the Illinois Insurance Code*, 32 Ill.L. Rev. 391, 405 (1937). This is consistent with the purpose of punitive damages as a deterrent as well as a punishment. *See Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 565, 384 N.E.2d 353, 359 (1978). The court finds section 155 to have been punitive in nature even before the 1977 amendments and before *Ledingham* was decided. Accordingly, the *Wright* limitation does not affect preemption.

Judge Marshall also cites the legislative history of the 1977 amendments to show that section 155 is not preemptive. That history shows a statement from the Illinois Laws and Study Commission Committee Report, stating:

> Insurance companies, particularly in California, are experiencing with some frequency the problem of punitive damages being demanded in almost any litigated claim.... [T]he Commission thought that the insurance industry might have taken the opportunity to utilize Senate Bill 517 [the 1977 amendment to section 155] to establish statutory limits on the amount of punitive damages. This was not done.

*Kelly v. Stratton*, 552 F.Supp. at 648, *quoting* Illinois Insurance Laws Study Commission, Final Report to the Governor and the 80th General Assembly, 18–19 (1977).

The court does not find this history dispositive as to punitive damages in this case. The insurance industry lobbied for the amendments. *See e.g., Roberts, supra*, 568 F.Supp. at 580. While it is not clear that the legislature intended to preempt the punitive tort remedy it is also not clear that they had no such intention. The *Cunningham-Hall* doctrine is a judicially-created doctrine of respect for legislative remedies which precludes creation of judicial remedies for problems already handled by the legislature. Section 155, even at its incep-

tion in 1937, was punitive in nature. The legislative history of 1977 amendments does not affect this nature and does not affect judicial deference to the remedy.

■ Accordingly, the court predicts that the Illinois Supreme Court would find section 155 to preempt punitive tort damages but not compensatory tort damages. This holding is in accord with the holding in the 2d Appellate District. *See Hoffman v. All-state Insurance Co., supra*. Thus, plaintiff's claim for punitive damages in count II is dismissed, but its claim for compensatory damages survives any section 155 preemption.

■ Defendant also moves to dismiss count II for failure to state a cause of action. Defendant suggests that count II is merely an element of count IV's bad faith claim and is not a separate and independent tort. Under *Ledingham*, there is a duty upon both parties to an insurance contract to act in good faith and deal fairly. *Ledingham, supra*, 29 Ill.App.3d at 350, 330 N.E.2d at 548. *See Siegal v. Health Care Service Corp.*, 81 Ill.App.3d 784, 793, 36 Ill.Dec. 899, 906, 401 N.E.2d 1037, 1044 (1st Dist.1980). Breach of that duty constitutes the tort. *See Ledingham, supra*. This was properly alleged in count IV. Wilful and wanton conduct is generally recognized in Illinois as an aggravated form of negligence. *See McRoberts v. Maxwell*, 40 Ill.App.3d 766, 769, 353 N.E.2d 159, 160–61 (4th Dist.1976) (*citing* Prosser, *Law of Torts* 185 (4th Ed.)). Negligence is not a proper grounds for a tort recovery under a contract. Wilful and wanton misconduct, however, can also be considered an aggravated form of bad faith. As such it would aver a slightly different cause of action than count IV. *See generally Alley v. Champion*, 75 Ill.App.3d 878, 881, 31 Ill. Dec. 533, 536, 394 N.E.2d 735, 738 (2d Dist.1979). Though counts II and IV may be somewhat repetitious, there is no reason at this time to dismiss on that basis. *See generally* Fed.R.Civ.P. 8(e).

## COUNT III

Plaintiff alleges violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act (Act). Ill.Rev.Stat. ch. 121½, §§ 261, *et seq.* (1979). The Act "is designed to protect consumers from unfair and deceptive acts and practices." *Fox v. Industrial Casualty Insurance Co.*, 98 Ill. App.3d 543, 546, 54 Ill.Dec. 89, 92, 424 N.E.2d 839, 842 (1st Dist.1981). The Act is to be liberally construed to effectuate its purposes. Ill.Rev.Stat. ch. 121½, § 271a. Plaintiff alleges the following to bring defendant's conduct within the Act:

95. As part of its effort to sell insurance policies to Barr Co. and other insureds, Safeco represented that it would promptly and fairly investigate all claims made under its policy, and would promptly indemnify its insured for all losses within the policy coverage.

\* \* \* \* \* \*

97. At all times relevant, Safeco had engaged in a practice of not paying promptly and completely claims for indemnity which Safeco knew were due and owing its insureds.

98. At all times relevant, Safeco had engaged in a practice of delaying the payment of proper claims as a means of causing its insureds to negotiate with Safeco for settlement payments which were less than the full and fair value of the insureds claims.

\* \* \* \* \* \*

101. Safeco concealed and omitted to disclose its practice of attempting to settle and negotiate valid claims for amounts less than the losses suffered by its insureds. Safeco's misrepresentations violate the Consumer Fraud and Deceptive Practices Act in that they misled Barr Co. and caused Barr Co. to believe that it had purchased insurance coverage from Safeco which would promptly and fully indemnify Barr Co. for any loss within the policy limits and coverage.

Defendant moves to dismiss this count on a number of grounds. First, it claims the Illinois Insurance Code preempts application of this Act to insurance contracts. In *Fox v. Industrial Casualty Insurance Co., supra,* however, the court found insurance consumers to be covered by the Act. *See* 98 Ill.App.3d at 546, 54 Ill.Dec. at 92, 424 N.E.2d at 842. While the court did state that "remedies available to an insured in actions against an insurer for the latter's refusal to pay a claim are limited to those enumerated in section 155," it went on to note that insureds were not relegated only to the Insurance Code for other claims. *Id.* Plaintiff alleges in count III a series of misrepresentations. This count alleges more than mere refusal to pay a claim and thus is not preempted by the Illinois Insurance Code.

Defendant also argues that the second amended complaint was filed in December 1983, over three years past the dates any claim arose in August 1980 and, therefore, outside the three-year statute of limitations. *See* Ill.Rev.Stat. ch. 121½, § 270a(e) (1979). Plaintiff contends, however, that it could not have become aware of the misrepresentation until defendant refused payment, which brings the complaint well within the three-year limit. In *Chicago Board Options Exchange, Inc. v. Connecticut General Life Insurance Co.,* 713 F.2d 254 (7th Cir.1983), the District Court had dismissed a cause of action under the Act on statute of limitations grounds because contract formation fell outside the time period. The Seventh Circuit reversed, stating that the time period should begin running when plaintiff should have realized that the defendant's statements were false. *Id.* at 261. In the present case plaintiff claims that it could only have realized the existence of misrepresentations when its claim was refused. Defendant, which consistently sought more information from plaintiff delaying the time of its claim denial, cannot now seek dismissal on statute of limitations grounds in the face of that denial.

Defendant argues that this claim, being merely a contract action at heart, is not cognizable under the Act. As stated

before, plaintiff alleges more than the "isolated breach of contract" discussed in *Exchange National Bank v. Farm Bureau Life Insurance Co.*, 108 Ill.App.3d 212, 215, 63 Ill.Dec. 884, 887, 438 N.E.2d 1247, 1250 (3d Dist.1982). Instead, plaintiff alleges a series of misrepresentations made to a series of insureds. Plaintiff is not alleging an isolated incident. In any event, insurance contracts are matters of public policy, *see M.F.A. Mutual Insurance Co. v. Cheek*, 66 Ill.2d 492, 501, 6 Ill.Dec. 862, 866, 363 N.E.2d 809, 813 (1977), and misrepresentations made with regard to such contracts would be the type covered by the Act. *See Heinold Commodities, Inc. v. McCarty*, 513 F.Supp. 311, 312–13 (N.D.Ill. 1979). Claims of misrepresentations in the selling of insurance have been held cognizable under the Act. *See Browder v. Hanley Dawson Cadillac Co.*, 62 Ill.App.3d 623, 629–31, 20 Ill.Dec. 138, 142–44, 379 N.E.2d 1206, 1210–12 (1st Dist.1978). Accordingly, count III is properly alleged under the Act.

 Defendant raises one final issue regarding this count.[5] It claims that count III is an action for fraud and, therefore, must be pled with particularity pursuant to Fed.R.Civ.P. 9(b). Defendant cites *Service Master Industries, Inc. v. McLeod*, 218 U.S.P.Q. 515 (E.D.Wis.1982). In *Service Master*, the court held that Rule 9(b) applied to a count alleging violation of Wisconsin's Deceptive Trade Practice law. The court noted that one purpose of the rule

> is to protect a party from allegations of fraud which were unfounded or which cannot be substantiated because of the injury to a person's reputation, which such allegations, involving as they do an element of unethical or immoral behavior, can cause even if unfounded. *Lincoln National Bank v. Lamp[e]*, 414 F.Supp. [1270], 1271, 1278–79 (N.D.Ill. 1976).

*Id.* at 518. *See Adair v. Hunt International Resources Corp.*, 526 F.Supp. 736, 744 (N.D.Ill.1981). While violation of the Illinois Consumer Fraud and Deceptive Business Act is not the same as the commission of common law fraud, *see Duhl v. Nash Realty Co.*, 102 Ill.App.3d 483, 491, 57 Ill.Dec. 904, 914, 429 N.E.2d 1267, 1277 (1st Dist.1981), it is considered a fraudulent act. *See People ex rel. Fahner v. American Buyers Club*, 115 Ill.App.3d 759, 71 Ill.Dec. 216, 218, 450 N.E.2d 904, 906 (3d Dist.1983). The same stigma discussed in *Service Master*, therefore, would attach. Accordingly, the court believes the protections of Rule 9(b) apply.

 Rule 9(b) requires that in averments of fraud, the circumstances constituting fraud be stated with particularity. The rule's "requirement as to 'circumstances' calls for a complaint to specify 'matters such as the time, place, and contents of the false representations, as well as the identity of those involved.' 5 Wright, Miller, & Cooper, *Federal Practice & Procedure: Civil Section 1297 at 403.*" *Darling & Co. v. Klouman*, 87 F.R.D. 756, 757 (N.D.Ill.1980). As this court has noted, the "particularity requirements of Rule 9(b), however, are not unbounded. Rather, they are limited by the admonitions of Rule 8 and its subparts requiring short, plain and concise statements of a claim." *Adair v. Hunt International Resources Corp.*, 526 F.Supp. at 744. Plaintiff has alleged that defendant misrepresented its policies concerning investigations of claims and payment of covered losses. Safeco is aware of when negotiations for the contract took place and between whom. While plaintiff has not specified the other insureds mentioned in the complaint, that knowledge—on both parties' parts—can wait until discovery. The conclusions in *Adair* apply in this case also:

> The complaint adequately details, in broad strokes, the nature and essential factual elements of the alleged fraud.

---

5. The question of whether punitive damages are allowed under the Act was addressed by plaintiff but never raised by defendant. The court's decision on that question will await further briefing by the parties.

Although every instance of fraudulent conduct is not set forth in the pleadings, the defendants are not left guessing as to the outlines of the fraud, its purposes, or the critical facts which are purportedly misrepresentations. Thus, to the extent that defendants assert they have insufficient notice of alleged wrongs, their claim is rejected. Simply stated, Rule 9, when read "together with" Rule 8, requires no more detail of the fraud than has already been given. Further specifics as to the complained of activities can be acquired readily through the discovery process.

*Id.* at 744.

### COUNT IV

 Defendant moves to dismiss Count IV on two grounds. First, as with Count II, it claims preemption under section 155. As previously discussed, the court finds section 155 to preempt only punitive recovery and not compensatory recovery. Count IV's claim for compensatory relief, therefore, survives that part of the motion. Defendant also moves to dismiss Count IV for failure to state a claim. It contends that plaintiff has not met its burden in its allegations to show the unreasonableness necessary to sustain such an action. Barr alleges Safeco and knew of its liability, knew of the damage a refusal would cause Barr, and knew of Barr's complete cooperation. Despite this, Barr alleges, Safeco wilfully refused payment. If these allegations are proven, Barr has stated a cognizable tort claim.

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is denied except as to the requests for punitive damages in Counts II and IV, where it is granted.