**IMPEX SHRIMP & FISH COMPANY, Plaintiff,**

v.

**The AETNA CASUALTY AND SURETY COMPANY, et al., Defendants.**

No. 84 C 8516.

United States District Court, N.D. Illinois, E.D.

June 14, 1985.

Edwin R. McCullough, Chicago, Ill., for plaintiff.

Frank Schneider, Timothy Reagan, Clausen, Miller, Gorman, Caffrey and Witous, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

GRADY, Chief Judge.

This case is before us on the motion of defendant Aetna Casualty and Surety Company ('Aetna') to dismiss Counts III, IV and V of plaintiff's complaint. For the reasons given below, Aetna's motion is granted in part and denied in part.

### BACKGROUND

Impex Shrimp and Fish Co., Inc. ('Impex') is an Illinois corporation engaged in the business of selling seafood products. Defendant Channelwise International Company ('Channelwise') is a Taiwanese exporter of seafood products. Impex claims that it negotiated a sales contract with Channelwise in which Channelwise agreed to sell 1055 cases of shrimp of a certain size for $88,345.00. Originally, Impex was going to require that it not pay Channelwise until the Federal Drug Administration ('FDA') had accepted the shrimp as meeting United States health standards. Based upon rep-

resentations made by Channelwise and Aetna, however, to the effect that Aetna had previously insured Channelwise's shrimp and would promptly pay a claim should the FDA reject the shrimp, Impex agreed to pay Channelwise before FDA acceptance, provided that Channelwise insure the shrimp for 110 per cent of the price paid by Impex.

Pursuant to this contractual agreement and communications made among Impex, Channelwise and Aetna, Aetna issued an insurance policy for the shrimp in the amount of $97,190.00, payable to Impex. Impex claims that under this policy Aetna was to pay for any loss of the shrimp, including rejection by the FDA.

Impex claims that prior to shipment of the shrimp from Taiwan, Aetna's agent inspected this shrimp and issued a Survey Report stating that Channelwise had frozen 1055 cases of shrimp of the type and weight specified in the contract. The shrimp were then shipped to Impex. At Impex's Illinois place of business, the shrimp were inspected and eventually rejected by the FDA because they apparently had not been frozen properly. Impex had paid Channelwise the contract price, but Aetna has refused to pay Impex under the insurance policy.

Aetna admits that Impex contracted with Channelwise, that it issued an insurance policy covering the shrimp specified in the contract, and that the FDA rejected the shrimp. It has refused to pay because it claims that the shrimp covered by the policy are not the shrimp rejected by the FDA. Aetna also claims that Impex violated various terms and conditions of the insurance policy, thus barring Impex from recovering.

The three counts of Impex's complaint which Aetna seeks to dismiss are Count III, in which Impex seeks compensatory and punitive damages for Aetna's misconduct under Ill.Rev.Stat. ch. 73, ¶ 766.6; Count IV, a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ('Consumer Fraud Act'), Ill.Rev.Stat. ch. 121½, ¶¶ 261 et seq.; and Count V, based upon equitable estoppel.

DISCUSSION

### Count III—Tortious Refusal to Pay Under ¶ 766.6

Aetna claims that Ill.Rev.Stat. ch. 73, ¶ 767 preempts all tort claims based upon an insurance company's bad faith refusal to pay a claim. Aetna also argues that ¶ 766.6 does not give rise to a private cause of action. Since Impex claims damages under ¶ 767 in Count II of its complaint, Aetna argues that Count II encompasses Impex's total possible relief for any refusal to pay (aside from the amount specified in the insurance policy).

Aetna is correct that ¶ 766.6 does not give rise to a private cause of action. *Van Vleck v. Ohio Casualty Insurance Co.,* 471 N.E.2d 925, 128 Ill.App.3d 959, 84 Ill. Dec. 159 (3d Dist.1984); *Hoffman v. Allstate Insurance Co.,* 85 Ill.App.3d 631, 40 Ill.Dec. 925, 407 N.E.2d 156 (2d Dist.1980). The only method by which an insured can obtain damages caused by an insurer's bad faith refusal to pay is to sue under ¶ 767, which plaintiff has done in Count II. Because there is no statutory or common law cause of action for an insurer's bad faith refusal to pay outside of ¶ 767, Count III fails to state a claim and must be dismissed.

We have held that ¶ 767 preempts common law causes of action on four previous occasions: *Zakarian v. The Prudential Insurance Co. of America,* 626 F.Supp. 420 (N.D.Ill.1984) (Grady, J.); *Tramm Investment Corp. v. Great Southwest Insurance Co.,* No. 81 C 1851, Memorandum Op. (N.D. Ill. Feb. 15, 1983) (Grady, J.) [available on WESTLAW, 1983 WL 1568]; *Bank of Naperville v. Merrimack Mutual Fire Insurance Co.,* No. 81 C 774, Memorandum Op. (N.D.Ill. Oct. 28, 1983) (Grady, J.) [available on WESTLAW, 1982 WL 1581]; *Hyler v. Prudential Insurance Co. of America,* No. 79 C 2507, Memorandum Op. (N.D.Ill. Aug. 3, 1982) (Grady, J.) [available on WESTLAW, 1982 WL 1582]. Recent case law supports our ruling on this issue. See,

e.g., *Anderson v. Mutual of Omaha Insurance Co.*, 594 F.Supp. 726 (S.D.Ill.1984).

■ Even if ¶ 767 did not preempt common law causes of action, or only preempted punitive and not compensatory damages, see *UNR Industries, Inc. v. Continental Insurance Co.*, 46 B.R. 430 (N.D.Ill.1984), Count III still fails to state a claim because Illinois common law does not provide for a cause of action for bad faith refusal to pay under the circumstances of this case.

The Illinois case cited for recognition of a common law action for bad faith refusal to pay is *Ledingham v. Blue Cross Plan Hospital Care*, 29 Ill.App.3d 339, 330 N.E.2d 540 (5th Dist.1975).[1] See, e.g., *Barr Co. v. Safeco Insurance Co. of America*, 583 F.Supp. 248, 256 (N.D.Ill.1984). In Ledingham, the court found a cause of action because '[i]n the life and health insurer-insured relationship there is a duty upon both parties to act in good faith.' *Ledingham*, 29 Ill.App.3d at 350, 330 N.E.2d at 548. Nothing in *Ledingham* supports an expansion of its holding to business insurance relationships such as the one here. As a federal court, we are not inclined to expand upon Illinois case law, especially where, as here, the Illinois resident chose the federal forum to prosecute its claim.

Therefore, because ¶ 766 does not provide a statutory cause of action, ¶ 767 preempts any common law cause of action; and even if ¶ 767 does not preempt the cause of action recognized in Ledingham, that cause of action does not encompass the commercial relationship present here, Court III is dismissed with prejudice.

### Count IV—Consumer Fraud

Count IV alleges that by concealing Channelwise's previous FDA rejections and Aetna's practice of failing to pay claims, Aetna violated the Consumer Fraud Act. Aetna claims that this count must be dis-

missed for four reasons. First, it argues that an isolated fraud in the inducement of a contract is not actionable under the Act, citing *Exchange National Bank v. Farm Bureau Life Insurance Co.*, 108 Ill.App.3d 212, 438 N.E.2d 1247 (3d Dist.1982). Second, it states that Impex has no standing because it was not a party to the insurance policy. Third, it argues that there is no rational relationship between the misrepresentations alleged and Impex's reliance. Finally, Aetna claims that the count is not pled with the specificity required by Fed.R. Civ.P. 9(b).

■ *Exchange National Bank.* In order to sue under the Consumer Fraud Act, a plaintiff must be either a consumer as defined by Ill.Rev.Stat. ch. 121½, ¶ 261(e),[2] or a businessman. See *Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 13 Ill.Dec. 699, 371 N.E.2d 634 (1977). Originally, the Act only protected consumers. In 1973, the Act was amended to include protection of 'businessmen,' without defining the term. See *McDonald's Corp. v. Gunvill*, 441 F.Supp. 71 (N.D.Ill.1977), aff'd, 622 F.2d 592 (7th Cir.1980).

The Illinois appellate court has stated that a businessman cannot sue under the Act merely because an isolated act of fraud inducted him to enter into a contract, allegedly breached by the defendant. *Exchange Bank*, 108 Ill.App.3d at 216, 438 N.E.2d at 1250. See also *Evanston Motor Co., Inc. v. Mid–Southern Toyota*, 436 F.Supp. 1370, 1374 (N.D.Ill.1977) (Act not available to redress purely private wrongs); *Frahm v. Urkovich*, 113 Ill.App.3d 580, 69 Ill.Dec. 572, 575, 447 N.E.2d 1007, 1011 (1st Dist. 1983) (alleged violative conduct must affect consumers generally). Aetna argues that the situation here is similar to the plaintiff's situation in Exchange, in that Impex, a business, is complaining about fraud going to one isolated contract.

---

1. Ledingham did not discuss ¶ 767 at all, and a later Fifth District case held that ¶ 767 barred any private cause of action. See *Fisher v. Fidelity & Deposit Co. of Maryland*, 125 Ill.App.3d 632, 80 Ill.Dec. 880, 466 N.E.2d 332 (5th Cir.1984).

2. Paragraph 261(e) defines a consumer as any person who purchases or contracts for purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that a member of his household. N.D.Ill 1985.

We believe that Impex does state a claim under the Act because it is a consumer in this instance, not merely a business suffering from competition from businesses employing deceptive practices. Judge Shadur recently explained the ambit of the Consumer Fraud Act in *Newman–Green, Inc. v. Alfonzo–Larrain*, 590 F.Supp. 1083 (N.D.Ill.1984). He concluded that the Act was meant to provide a broad protection of consumers, and, therefore, non-consumer businessmen were meant to be protected only when they can show that they have suffered competitive injuries caused by the defendant's deceptive or fraudulent conduct in providing goods or services to its market in general. Id. at 1087. Such a showing demonstrates that consumers are affected by the defendant's conduct, implicating the consumer protection concerns of the Act and giving the businessmen standing to complain about the conduct.

Here, the insurance was bought as a consumer product; neither Channelwise nor Impex sought to resell the insurance. See footnote 2. Since Impex is suing as a consumer, and not a non-consumer businessman affected competitively, under the Act it need not make the generalized showing required in Newman–Green. The fact that Impex happens to be a business as well as a consumer is irrelevant; business consumers have standing equal to non-business consumers. See *U.S. Rail Services, Inc. v. North American Car Corp.*, 83 C 133 Memorandum Op. (N.D.Ill. Dec. 16, 1983) (Grady, J.); *Joslyn Manufacturing and Supply Co. v. Honeywell Information Systems*, No. 79 C 4561, Order (N.D. Ill. Aug. 30, 1983) (Grady, J.), Memorandum Op. (N.D.Ill. Jan. 13, 1983) (Grady, J.). As long as the plaintiff, whether a business entity or a person, is a consumer, it need only show personal injury caused by the fraudulent or deceptive acts, and Aetna's first argument must fail.

■ Standing and direct purchase. As indicated, in order to have standing under the Consumer Fraud Act, a plaintiff must be a consumer with a specific injury, or a businessman with an injury affecting consumers in general. Nothing in the Act requires the consumer to have purchased directly from the defendant. The purpose of the Consumer Fraud Act is to protect consumers and businessmen from fraud and unfair and deceptive acts in the conduct of any trade or commerce. Title of Act, contained in Ill.Ann.Stat. ch. 121½, ¶ 261 (Smith–Hurd Supp.1984–85) at 131. Therefore, while violation of the Act is not the same as the commission of common law fraud, Illinois courts still look to common law principles to determine whether a defendant has committed a violation. See *Barr*, 583 F.Supp. at 258; *People ex rel. Fahner v. American Buyers Club*, 115 Ill.App.3d 759, 450 N.E.2d 904, 906 (3d Dist.1983). Under Illinois principles of common law fraud, a plaintiff need not demonstrate privity with the defendant; he need only prove that the defendant intended him to rely on the defendant's fraudulent statement, or that the defendant had a special reason to expect the plaintiff to rely on his statement. *Instituto Nacional v. Continental Illinois National Bank*, 576 F.Supp. 991, 997 (N.D.Ill.1983); *Roman v. Delta Air Lines, Inc.*, 441 F.Supp. 1160, 1166–67 (N.D.Ill.1977); *Rozny v. Marnul*, 43 Ill.2d 54, 62, 67, 250 N.E.2d 656, 660 (1969). Therefore, Impex states a claim if it alleges such reliance.

Reliance. Impex has alleged facts that support its right to sue under the principles enunciated above. It has stated that Aetna failed to reveal to it Channelwise's past record with the FDA or Aetna's claimant practices; that Aetna knew Impex would rely on these omissions; and that Impex did in fact rely on the omissions to its detriment. We cannot say at this point that there is no rational relationship between the omissions and Impex's decision to contract to pay Channelwise prior to FDA acceptance, on the condition that Channelwise obtain insurance from Aetna. Impex's claim that Aetna intended Impex to rely on its statements, and the fact that Impex is named as the beneficiary of the insurance policy sufficiently supports Impex's right to sue under Illinois law.

Rule 9(b). Aetna is correct in its claim that under the Consumer Fraud Act, Impex must plead fraud with particularity. *Barr*, 583 F.Supp. at 258. However, Impex has met Rule 9(b)'s standards in this complaint. See id. at 258–59. Further specifics can be obtained through discovery.

### Count V—Equitable Estoppel

Count V must be dismissed because it does not allege all the elements of equitable estoppel. The factual predicates of Impex's estoppel claim are (1) Aetna's amendment of its policy to include coverage of the shrimp until FDA acceptance, pursuant to Aetna's discussions with Impex and Channelwise; and (2) Aetna's alleged agent's Survey Report on Channelwise's freezing and shipping of the goods.

■ The first allegation cannot support an estoppel claim because Impex is arguing that a part of the policy itself calls for coverage, not that Aetna took action outside the policy precluding denial of coverage. Therefore, the first allegation is subsumed within Count I's claim for breach of the insurance policy.

■ The second allegation also fails to plead grounds for estoppel because Impex has not alleged that it relied on the Survey Report to its detriment. In order to claim estoppel, a plaintiff must prove that he detrimentally relied on defendant's conduct. See *National Tea Co. v. Commerce & Industry Insurance*, 119 Ill.App.3d 195, 74 Ill.Dec. 704, 456 N.E.2d 206 (1st Dist. 1983); *Kennedy v. Hospital Service Corp.*, 118 Ill.App.3d 584, 74 Ill.Dec. 176, 455 N.E.3d 206 (1st Dist.1983); *Ames v. Crown Life Insurance Co. of Toronto, Canada*, 85 Ill.App.3d 203, 40 Ill.Dec. 521, 406 N.E.2d 222 (3d Dist.1980); G. Couch, 18 Cyclopedia of Law (2d), s 71.16 at 233, s 71.17 at 233, s 71.19 at 235 (1983). See also *Sur v. Glidden–Durkee*, 681 F.2d 490 (7th Cir.1982) (applying Indiana law).

The only reliance pleaded by Impex in the complaint is its decision to contract to pay Channelwise prior to obtaining FDA acceptance of the shrimp. At the time the Survey Report was written, Impex had already contracted with Channelwise. Impex has not even alleged that it ever received this report, and, if it did not receive or otherwise acquire knowledge of the report, it is obvious there could have been no reliance.

It may be that Impex can allege that Aetna waived its rights under the policy, since waiver does not require reliance. See *National Tea*, 119 Ill.App.3d at 204–05, 74 Ill.Dec. at 711, 456 N.E.2d at 213; *Ames*, 85 Ill.App.3d at 206, 40 Ill.Dec. at 523, 406 N.E.2d at 224. In order to allege waiver, however, Impex must be prepared to demonstrate that Aetna voluntarily and intentionally relinquished a known and existing right. *Ames*, 85 Ill.App.3d at 204, 40 Ill. Dec. at 523, 406 N.E.2d at 224. Waiver can occur either through express language or by conduct. When the plaintiff seeks to prove waiver by conduct, he must demonstrate a clear, unequivocal and decisive act of waiver. *National Tea*, 119 Ill.App.3d at 205, 74 Ill.Dec. at 712, 456 N.E.2d at 214. The plaintiff must also demonstrate that the insurer had knowledge of all material facts before it deliberately waived its rights. *Kennedy*, 118 Ill.App.3d at 588, 74 Ill.Dec. at 706, 455 N.E.2d at 208. If Impex can in good faith allege such an act or expression of waiver, or can allege its own detrimental reliance on Aetna's conduct outside of the language of the policy itself, then Impex may amend Count V to include either a waiver or estoppel allegation.

### CONCLUSION

Count III is dismissed with prejudice; defendant's motion to dismiss Count IV is denied; and Count V is dismissed without prejudice. Plaintiff has until July 1, 1985, to amend Count V. Defendant has until July 22, 1985, to answer or otherwise plead to amended Count V.