**Robert A. SCHEINFELD, Plaintiff,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant.**

**No. 84 C 9551.**

United States District Court, N.D. Illinois, E.D.

Sept. 25, 1985.

Mark A. Orloff, Chicago, Ill., for plaintiff.

Milton J. Pfetzer, Lake Forest, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This action on a casualty insurance contract, coupled with a claim for defamation and tortious breach of a duty to act fairly and in good faith, is before the court on a motion to dismiss Count IV of Plaintiff's Amended Complaint. Jurisdiction is predicated on the basis of diversity under 28 U.S.C. § 1332. Plaintiff Robert Scheinfeld is alleged to be a Texas resident, and defendant American Family Mutual Insurance Company is alleged to have been organized under Wisconsin law and to have its principal place of business there. It is apparent from the relief sought that the amount in controversy satisfies the jurisdictional requirement, though this is not expressly stated. For the reasons stated below, the court grants the motion.

For purposes of the present motion, the facts alleged in plaintiff's complaint are taken as true. In Count I, plaintiff alleges that on or about December 1982, American Family issued a two-year "Businessowners Package Policy" of insurance on Scheinfeld's business property. Plaintiff further alleges that on December 31, 1983, Scheinfeld's business office in Chicago, Illinois was burglarized, resulting in loss of property and business income; that these losses were insured against by American Family;

that Scheinfeld performed all conditions precedent to performance of American Family's policy obligations; and that American Family breached the insurance contract by knowingly, willfully, and intentionally failing to pay the claim despite Scheinfeld's demands. Count I closes with a prayer for more than $17,983 in property and income loss, plus interest, costs, and attorney's fees.

Count II repeats the allegations of Count I, adding that American Family's "delay in responding" and "refusal to pay" constitutes "unreasonable and vexatious action within the meaning of" section 155 of the Illinois Insurance Code, Ill.Rev.Stat., ch. 73, ¶ 767. That section reads, in pertinent part:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
>
> (a) 25% of the amount which the Court or jury finds such party is entitled to recover against the company, exclusive of all costs:
>
> (b) $5,000;
>
> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount if any, which the company offered to pay in settlement of the claim prior to the action.

Count II closes with a prayer for $17,983 plus interest, costs, and attorney's fees, as well as $10,000 "pursuant to" ¶ 767.

Count III repeats the allegations of the first two counts, adding that after Scheinfeld filed his policy claim, American Family employees, with reckless disregard for the truth, made defamatory statements about Scheinfeld, including statements that his community reputation was not good and that he was stealing goods and services from others. In Count III, plaintiff further alleges that American Family's statements damaged Scheinfeld's community reputation, resulting in lost business, expenditures to defend himself, and severe mental distress. Count III closes with a prayer for special, actual, and general damages, plus punitive damages in excess of $75,000, costs, and attorney's fees.

After being granted leave, Scheinfeld amended his complaint by adding a fourth count to allege a tortious breach of a "duty of good faith and fair dealing." Count IV repeats most of the allegations of Count I, including the allegation that American Family "knowingly, willfully and intentionally fail[ed] to pay plaintiff's claim." Count IV then alleges that "[t]he actions of [American Family] and its employees in its investigation and denial of plaintiff's claim have been wilful, reckless, unfair and in bad faith" as a direct and proximate result of which Scheinfeld "has been injured." Count IV closes with a prayer for $17,983 plus interest and costs, in addition to more than $100,000 in compensatory and more than $500,000 in punitive damages. The basis of American Family's motion to dismiss is that Count IV fails to state a cause of action under applicable Illinois law and that, even if such a claim is stated, Illinois law would limit Scheinfeld's damages to those recoverable under his contract of insurance and section 155 of the Illinois Insurance Code.

A motion to dismiss for failure to state a claim should be granted only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In deciding the motion, the court must presume all factual allegations of the complaint to be true and make all reasonable inferences in favor of the non-movant. 2A J. Moore, *Moore's Federal Practice,* ¶ 12.07[2.–5] (2d ed. 1985). Nonetheless, "conclusory allega-

tions unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Because jurisdiction in this case rests solely on diversity of citizenship, the rule of *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) requires the court to apply state substantive law, which in this case is the law of Illinois.

American Family has argued that any recovery by Scheinfeld under a duty of good faith and fair dealing is limited to that allowed by section 155 of the Illinois Insurance Code, Ill.Rev.Stat., ch. 73, ¶ 767. In an earlier case, this court found the statutory remedies under section 155 to preempt any common-law recovery for an alleged breach of the duty of good faith and fair dealing in an insurer's conduct towards its insured. *Shaw v. Equitable Life Assurance Society,* No. 82 C 1421 (N.D.Ill. Oct. 29, 1982). Since then, two other judges of this district who had similarly held reconsidered the issue and have held that section 155 preempts punitive but not compensatory damages for cases alleging such a tort. *UNR Industries, Inc. v. Continental Insurance Co.,* 607 F.Supp. 855 (N.D.Ill.1984) (Hart, J.); *Barr Co. v. Safeco Insurance Co.,* 583 F.Supp. 248 (N.D.Ill.1984) (Moran, J.). Two other judges apparently adhere to the view that section 155 preempts all tort claims against an insurer predicated on a tortious refusal to pay. *Aabye v. Security-Connecticut Life Insurance Co.,* 586 F.Supp. 5 (N.D.Ill. 1984) (Aspen, J.); *Abbott Laboratories v. Granite State Insurance Co.,* 573 F.Supp. 193 (N.D.Ill.1983) (Shadur, J.). One judge has declined to find that section 155 preempts any common-law remedies in tort at all. *Roberts v. Western-Southern Life Insurance Co.,* 568 F.Supp. 536 (N.D.Ill. 1983) (Marshall, J.).

■ As noted by Judge Hart in *UNR,* 607 F.Supp. at 865, every Illinois Appellate Court addressing the issue has agreed that § 155 of the Illinois Insurance Code preempts a punitive damage award for an insurer's bad faith and unfair dealing in refusing to settle a claim. *Fisher v. Fidelity & Deposit Co. of Maryland,* 125 Ill. App.3d 632, 80 Ill.Dec. 880, 466 N.E.2d 332 (5th Dist.1984); *Kinney v. St. Paul Mercury Insurance Co.,* 120 Ill.App.3d 294, 75 Ill.Dec. 911, 458 N.E.2d 79 (1st Dist.1983); *McCall v. Health Care Service Corp.,* 117 Ill.App.3d 107, 72 Ill.Dec. 640, 452 N.E.2d 893 (4th Dist.1983); *Hoffman v. Allstate Insurance Co.,* 85 Ill.App.3d 631, 40 Ill. Dec. 925, 407 N.E.2d 156 (2d Dist.1980); *Debolt v. Mutual of Omaha,* 56 Ill.App.3d 111, 13 Ill.Dec. 656, 371 N.E.2d 373 (3d Dist.1978). Under this court's *Erie* obligations, the uniform result adopted by these decision cannot be disregarded absent "persuasive data that the highest court of the state would decide otherwise." *West v. AT & T,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940), quoted in *UNR,* 607 F.Supp. at 865–66. While plaintiff has made some cogent arguments about the full availability of common-law remedies for an insurer's bad faith conduct, none of those arguments are sufficiently persuasive to overcome the combined weight of the above authority.

■ In contrast to the uniform rule regarding the preemption of punitive damages, the Illinois Appellate Courts, along with the federal courts from this district, are split as to whether section 155 preempts a plaintiff's right to claim compensatory damages from an insurer's willful breach of bad faith and fair dealing. *See UNR,* 607 F.Supp. at 866–68; *Barr,* 583 F.Supp. at 256; *Hoffman,* 40 Ill.Dec. 659, 407 N.E.2d at 159; *McCall,* 70 Ill.Dec. at 643, 452 N.E.2d at 896 (4th Dist.1983) (all holding that section 155 does not preempt compensatory damages). *Cf. Fisher,* 80 Ill.Dec. at 887, 466 N.E.2d at 339 (holding that section 155 preempts punitive damages recovery without discussing compensatory damages). While other appellate panels have consistently held that section 155 preempts all tort recovery, *see UNR,* 607 F.Supp. at 867 (citing cases), those cases generally do not distinguish between compensatory and punitive damages, and

appear to grow out of a situation where the compensatory damages sought were no different than those recoverable on the insurance contract. The court finds the analyses of Judge Hart and Judge Moran in *UNR* and *Barr*, respectively, to be persuasive and holds that section 155 does not preempt compensatory damages from an insurer's bad faith actions in all cases. The question then is whether the plaintiff has stated a claim in tort for such compensatory damages here.

An Illinois court in 1975 first recognized such an independent cause of action in tort based on an insurer's breach of the duty of good faith and fair dealing toward its insured. *Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.*, 29 Ill.App.3d 339, 350, 330 N.E.2d 540 (5th Dist.1975), *rev'd on other grounds*, 64 Ill.2d 338, 1 Ill.Dec. 75, 356 N.E.2d 75 (1976). Basing its opinion chiefly on a line of California cases, the *Ledingham* court stated that in unusual cases breach of contract can constitute an independent willful tort, and held that one such case involves breach of the duty implied by law for each party to an insurance contract to act in good faith and to deal fairly with the other. 330 N.E.2d at 548. Although finding no bad faith on the facts, the Court noted that such a claim could be stated where a plaintiff alleges

> threatened and actual bad faith refusals to make payments under the policy, maliciously employed by defendants in concert with false and threatening communications directed to the policyholder for the purposes of causing him to surrender his policy or disadvantageously settle a nonexistent dispute. . . .

330 N.E.2d at 549 (quoting from *Fletcher v. Western National Life Insurance Co.*, 10 Cal.App.3d 376, 401, 89 Cal.Rptr. 78, 93 (1970).

Although *Ledingham* has been criticized in other Illinois appellate districts for its failure to address the possible preemptive effects of the Illinois Insurance Code, *see, e.g., Tobolt v. Allstate Insurance Co.*, 75 Ill.App.3d 57, 30 Ill.Dec. 824, 832–33, 393 N.E.2d 1171, 1179–80 (1st Dist.1979), the Illinois Supreme Court has cited *Ledingham* as authority for the proposition that conduct that breaches a contract may constitute an independent tort. *See Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 187, 23 Ill. Dec. 559, 566, 384 N.E.2d 353, 360 (1978). The tort of an insurer's bad faith conduct towards an insured, as opposed to the availability of common-law recovery for the tort, has been recognized in at least four of the five appellate districts of Illinois, including the First District in which this court sits. *See, e.g., Pekin Insurance Co. v. Home Insurance Co.*, 134 Ill.App.3d 31, 89 Ill.Dec. 72, 479 N.E.2d 1078 (1st Dist. 1985). As the *Pekin* court declared, "It is well established that an insurer has a duty to exercise good faith and to deal fairly with all parties an insured by its policies. . . . Further, an insurer who breaches this duty will be liable for the tort of bad faith." 479 N.E.2d at 1080.

Despite the *Pekin* court's characterization of this duty as "well established," the decision in *Ledingham* relied mostly on case law from outside Illinois, and *Ledingham* rarely has been applied due to the uniform case law which holds section 155 of the Insurance Code to preempt punitive damage awards for an insurer's unreasonable and vexatious conduct. Indeed, many of the Illinois cases can be read as simply assuming the existence of the tort for purposes of discussing the preemption issue.

A further problem with *Ledingham* is the obscurity of its underlying rationale. As pointed out in *Debolt v. Mutual of Omaha*, 56 Ill.App.3d 111, 13 Ill.Dec. 656, 660, 371 N.E.2d 373, 377 (3d Dist.1978), the reviewing court in *Ledingham* relied on law enunciated in the "duty to settle" cases which arise when an insurer is "granted by contract the right to complete control over the negotiation and litigation of claims against its insured." Where an insurer in bad faith ignores the interest of its insured in avoiding a judgment beyond the excess of the policy limits, the insured suffers monetary damages "not recoverable in an action on the contract" and is therefore

allowed to recover those damages for "breach of an implied duty of good faith." 371 N.E.2d at 377, 13 Ill.Dec. at 660. The *Debolt* court found this line of cases inapplicable where an insured attempts to predicate a tort upon an insurer's simple refusal to pay, however unjustified, since the insured in such situations can maintain an action on the contract at any time to obtain the benefits owed. *Id.*

Even those courts following *Ledingham* have recognized the tort of an insurer's bad faith conduct only in exceptional circumstances. According to *Pekin*, an Illinois court "will only recognize a bad faith claim when an insurer has acted in a vexatious, unreasonable, or outrageous manner towards its insured parties." *Pekin*, 89 Ill.Dec. at 74, 479 N.E.2d at 1080. Faced with a punitive damages allegation that "defendant has wilfully and wrongfully breached its fiduciary duties ... by deliberately and wrongfully" denying coverage, an earlier panel of Illinois appellate judges has written: "This is insufficient to allege anything more than a breach of contract. Most refusals to conform to a contract are deliberate: if recovery is allowed, they obviously are wrongful. The plaintiff has not alleged outrageous conduct...." *Florsheim v. Travelers Indemnity Co.*, 75 Ill. App.3d 298, 310, 30 Ill.Dec. 876, 886, 393 N.E.2d 1223, 1233 (1st Dist.1979). The only case outside the "duty to settle" context where a bad faith claim has succeeded is *Hoffman v. Allstate Insurance Co.*, 85 Ill.App.2d 631, 40 Ill.Dec. 925, 407 N.E.2d 156 (2d Dist.1980), where an insurer took possession of plaintiff's damaged car, towed it to an unknown location, informed plaintiff that the car was a total loss but then spuriously deducted from the plaintiff's recovery expenses for bringing the car up to retail standards. When plaintiff asked to view the car for the purpose of having it appraised, the insurer refused to reveal its location. The court found these allegations sufficient to withstand a motion to dismiss.

The present Count IV alleges merely that American Family's "actions ... in its investigation and denial of plaintiff's claim have been wilful, reckless, unfair and in bad faith and in breach of [its] duty to act fairly and in good faith. The term "wilful" may be considered equivalent to "deliberate," the term "reckless" is conclusory, and the allegations of "unfair" and "bad faith" actions simply mirror the name of the tort. All are unsupported by any allegation of fact to give them meaning other than a reference to American Family's "actions ... in its investigation and denial" of plaintiff's claim. Investigation would normally occur after any insurance policy claim is made, and denial is precisely what gives rise to an action on the contract in the first place.

As noted by this court in a similar case, while malice itself may be "averred generally" in a complaint, Fed.R.Civ.P. 9(b), an allegation of specific conduct constituting the tort of bad-faith breach of contract must accompany a malice averment. *Shaw v. Equitable Life Assurance Society*, No. 82 C 1421 (N.D.Ill. Oct. 29, 1982) (order granting motion to strike). Sheer bad faith, without some accompanying vexatious or outrageous conduct which inflicts damages not recoverable in a contract action, has never been held under Illinois law to constitute the tort of bad-faith breach of contract by an insurer. At the very least, a plaintiff should allege that the insurer must have known that it was liable on the contract but nonetheless refused to pay, and also have known that the insured would suffer substantial damage from the refusal. *See Barr*, 583 F.Supp. at 259; *Urfer v. Country Mutual Insurance Co.*, 60 Ill.App.3d 469, 17 Ill.Dec. 744, 376 N.E.2d 1073 (4th Dist.1978). Scheinfeld has not alleged either of these facts.

Scheinfeld's Count IV is more laconic than the conclusory allegations of bad faith upheld against a 12(b)(6) motion in *Kelly v. Stratton*, 552 F.Supp. 641, 643 (N.D.Ill.1982), and certainly briefer than those in *Barr*, 583 F.Supp. at 259, or *UNR*, 607 F.Supp. at 858, both of which involved alleged misrepresentation. Count IV similarly falls far short of the extensively alleged misdeeds contemplated by the *Ledingham* court when it first enunciated the tort of bad faith conduct towards an insured. 330 N.E.2d at 549.

**704**

Construing all inferences in Scheinfeld's favor, American Family's unspecified "actions" could also be taken to refer to the allegations regarding defamation from Count III. Scheinfeld has not incorporated those allegations into Count IV, however, and appears to base his tort claim solely on American Family's bad faith "investigation and denial" of his claim. While American Family's post-denial behavior in defaming Scheinfeld might satisfy the element of outrageous conduct for stating a tort claim based on an insurer's bad faith conduct, any bad faith claim based on defamation would merely duplicate the recovery already requested in Count III and unnecessarily complicate issues. Since the tort requires "outrageous" conduct, adding such a count would not appear to lighten Scheinfeld's burden of proof in Count III, and the obscure nature of the duty would pose numerous problems in formulating coherent jury instructions. If plaintiff uncovers legal authority or can allege specific facts which would support compensatory damages beyond those already sought, plaintiff may seek leave to amend.

Accordingly, the motion to dismiss Count IV of plaintiff's amended complaint is granted.

It is so ordered.