NOTICE: Under Supreme Court Rule 367 a party has 21 days after

the filing of the opinion to request a rehearing. Also, opinions

are subject to modification, correction or withdrawal at anytime

prior to issuance of the mandate by the Clerk of the Court.

Therefore, because the following slip opinion is being made

available prior to the Court's final action in this matter, it

cannot be considered the final decision of the Court. The

official copy of the following opinion will be published by the

Supreme Court's Reporter of Decisions in the Official Reports

advance sheets following final action by the Court.

                                    

                Docket No. 79943--Agenda 14--March 1996.

      STEVEN CRAMER, Appellee, v. INSURANCE EXCHANGE AGENCY et al.

          (Economy Fire & Casualty Company et al., Appellants).

                     Opinion filed October 24, 1996.

     JUSTICE NICKELS delivered the opinion of the court:

     We consider here whether a plaintiff may pursue a common law

fraud action arising from the purported cancellation of an

insurance policy. In a complaint filed in the circuit court of Knox

County, plaintiff, Steven Cramer, alleged that defendants, Economy

Fire and Casualty Company and its claims examiner, engaged in fraud

and deceptive practice with regard to the cancellation of his

policy. Defendants filed a motion for summary judgment claiming

that the suit was untimely, based on a one-year limitation

provision contained in the policy. The circuit court construed the

action as a common law fraud action and denied the motion for

summary judgment.

     The circuit court certified two questions for interlocutory

appeal: (1) whether section 155 of the Illinois Insurance Code (215

ILCS 5/155 (West 1994)) preempts a common law fraud cause of action

against an insurance company for its alleged unreasonable conduct

in denying an insurance claim; and (2) whether a limitation

provision of an insurance policy which states that "[n]o action can

be brought unless the policy provisions have been complied with and

the action is started within one year after the date of loss" is

applicable to a common law fraud cause of action against an

insurance company for its allegedly unreasonable conduct in denying

an insurance claim. The appellate court answered "no" to both

questions and affirmed denial of summary judgment. 275 Ill. App. 3d

68. We granted defendants' petition for leave to appeal. 155 Ill.

2d R. 315. We reverse.

                                BACKGROUND

     In 1991, plaintiff purchased a homeowner's insurance policy

from the insurer and paid the premium. The policy covered

plaintiff's personal property and was to run for one year from

October 25, 1991, to October 25, 1992. Plaintiff's residence was

later burglarized. The underlying dispute arises from the insurer's

attempted cancellation of the policy. The insurer argues that it

cancelled the policy before the burglary occurred. Plaintiff

contends that he never received a notice of cancellation and that

any purported cancellation is fraudulent.

     Initially, we note that plaintiff raised allegations against

two sets of defendants in the complaint: (1) the Insurance Exchange

Agency and one of its employees, and (2) Economy Fire and Casualty

Company and a claims examiner (collectively, insurer). Plaintiff

sought $6,909 from the Insurance Exchange Agency and its employee.

This $6,909 amount represents the total amount of plaintiff's loss.

Plaintiff sought an additional $6,909 in damages from the insurer,

which he labelled "double indemnity" damages.

     With respect to the first set of defendants, we note that the

Insurance Exchange Agency is an independent insurance agency and

was initially involved with plaintiff's application for insurance.

In the complaint, plaintiff alleged that the Agency and its

employee engaged in negligence in connection with the issuance of

his policy. Plaintiff alleged that they did not forward

documentation that was needed to complete the application. These

defendants, however, did not participate in the motion for summary

judgment, which is the subject of this appeal. Because this appeal

involves only the insurer, we do not discuss the allegations

against these two defendants further.

     With respect to the second set of defendants, plaintiff

alleged that he never received a notice of cancellation from the

insurer and was never informed that the policy was cancelled.

Plaintiff claims that the insurer did not send a notice of

cancellation at all. Plaintiff claims that the insurer is using

this purported cancellation "with the expressed and intentional

purpose to defraud Plaintiff out of his coverage which he was

legally entitled to."

     According to the insurer, on December 2, 1991, a notice of

cancellation was sent to plaintiff. The policy was being cancelled

because the insurer had been unable to obtain certain information

from plaintiff. According to the insurer, the cancellation went

into effect on January 6, 1992.

     Three days later, on January 9, 1992, plaintiff's home was

burglarized. Plaintiff sent his proof of loss statement to the

insurer in May, showing a loss of $6,909. On May 22, 1992, the

insurer denied the claim because the burglary had occurred three

days after the policy was cancelled. Plaintiff's premium was

refunded in June 1992. In October 1993, more than a year later,

plaintiff filed this suit pro se.

     The insurer moved for summary judgment. The insurer based its

motion for summary judgment solely on the one-year suit limitation

clause included in the insurance policy. This clause requires that

any action on the policy be brought within one year after the date

of loss. Plaintiff filed his action more than a year after the

burglary and more than a year after his claim under the policy was

denied. Thus, according to the insurer, an action alleging breach

of the policy is untimely.

     At the hearing on the insurer's motion for summary judgment,

the circuit court construed the complaint as stating a cause of

action for fraud, rather than for breach of the policy. The court

then found that the suit limitation clause contained in the policy

applied only to actions on the policy and did not apply to common

law fraud actions. The circuit court, however, gave defendants time

to provide additional authority.

     The insurer filed a supplement to the motion for summary

judgment. It argued that, to the extent this action is a breach of

contract action, it is precluded by the one-year limitation period

provided in the policy. The insurer further argued that, to the

extent the action is a tort action, it was barred by the preemptive

effect of section 155 of the Insurance Code. Essentially, section

155 provides a remedy to policyholders whose insurers engage in

unreasonable and vexatious conduct when delaying payment or denying

a claim. The circuit court rejected the insurer's arguments and

denied summary judgment.

     The appellate court affirmed. First, the appellate court

considered the effect of section 155 on a common law fraud action.

It held that section 155 does not preempt a common law action for

fraud against an insurer for its unreasonable conduct in denying a

claim. In reaching its decision, the court relied principally on

decisions finding that section 155 does not preempt the tort of bad

faith and unfair dealing.

     Second, the appellate court considered whether the limitation

provision in the policy barred a tort action relating to the

policy. It found that a common law fraud action involving policy

proceeds is collateral to an action for breach of contract. It held

that the suit limitation provision in the policy applied only to

actions on the policy and not to plaintiff's action in fraud.

Accordingly, the appellate court affirmed the circuit court's

denial of summary judgment, agreeing that plaintiff should be

allowed to pursue his action.

                                 ANALYSIS

     The denial of summary judgment is an interlocutory order that

is generally not appealable. Supreme Court Rule 308(a) allows

appeal of an interlocutory order to the appellate court where "the

order involves a question of law as to which there is substantial

ground for difference of opinion and *** an immediate appeal from

the order may materially advance the ultimate termination of the

litigation." 155 Ill. 2d R. 308. The appellate court's decision may

then be appealed to this court under Rule 315. 155 Ill. 2d R. 315.

     The insurer argues that plaintiff has alleged nothing more

than unreasonable and vexatious conduct in the complaint. The

statute provides a remedy for such conduct. The insurer argues that

the statute, in conjunction with a breach of contract action,

provides the remedy for this conduct, not an independent tort

action. According to the insurer, plaintiff's action is essentially

a breach of contract action, which is barred by the limitation

clause contained in the policy.

     Much of the analysis of the circuit and appellate courts

relies on cases involving the tort of bad faith and unfair dealing.

Although the complaint is inartfully drafted, it could be construed

as alleging bad faith and unfair dealing. Here, we examine how the

analysis employed by the lower courts, including their reliance on

cases involving the tort of bad faith, applies to the allegations

raised in the instant complaint.

     In part I, we examine the development of section 155. In part

II, we consider the interaction of the statute with tort law. We

hold that section 155 does not preempt a separate and independent

tort action involving insurer misconduct. We also hold, however,

that the tort of bad faith is not a separate and independent tort

action that is recognized in Illinois. In part III, we consider the

allegations raised in plaintiff's complaint. We find that the

allegations in the complaint seek to state a cause of action for

breach of the policy, which is barred by the suit limitation

provision. Accordingly, the insurer is entitled to summary

judgment.

                                     I

     Resolution of this appeal requires an examination of the

statute. Section 155 provides:

               "Attorney fees. (1) In any action by or against a

          company wherein there is in issue the liability of a

          company on a policy or policies of insurance or the

          amount of the loss payable thereunder, or for an

          unreasonable delay in settling a claim, and it appears to

          the court that such action or delay is vexatious and

          unreasonable, the court may allow as part of the taxable

          costs in the action reasonable attorney fees, other

          costs, plus an amount not to exceed any one of the

          following amounts:

               (a) 25% of the amount which the court or jury finds

          such party is entitled to recover against the company,

          exclusive of all costs;

               (b) $25,000;

               (c) the excess of the amount which the court or jury

          finds such party is entitled to recover, exclusive of

          costs, over the amount, if any, which the company offered

          to pay in settlement of the claim prior to the action."

          215 ILCS 5/155 (West 1994).

The statute provides an extracontractual remedy to policyholders

whose insurer's refusal to recognize liability and pay a claim

under a policy is vexatious and unreasonable. Kush v. American

States Insurance Co., 853 F.2d 1380, 1385 (7th Cir. 1988); UNR

Industries, Inc. v. Continental Insurance Co., 607 F. Supp. 855,

863 (N.D. Ill. 1984). Ordinarily, a policyholder may bring a breach

of contract action to recover the proceeds due under the policy.

Pursuant to the statute, a plaintiff may also recover reasonable

attorney fees and other costs, as well as an additional sum that

constitutes a penalty.

     Section 155 was enacted in 1937, as part of a major revision

of the Illinois Insurance Code. In its original version, known as

section 767, it allowed an award of attorney fees, up to a maximum

of $500, if an insurer's refusal to pay a claim was "vexatious and

without reasonable cause." Ill. Rev. Stat. 1937, ch. 73, par. 767.

Under the statute, a plaintiff could seek limited attorney fees, in

addition to an action to recover the policy proceeds. Before the

statute was enacted, a plaintiff could not seek an award of

attorney fees, regardless of the bad faith of the insurer. The

purpose of the statute was to provide a remedy for insurer

misconduct:

               "Although some companies are very liberal in the

          payment of claims, this is by no means true of all. In

          the absence of any allowance of attorneys' fees, the

          holder of a small policy may see practically his whole

          claim wiped out by expenses if the company compels him to

          resort to court action, although the refusal to pay the

          claim is based upon the flimsiest sort of a pretext. The

          strict limit on the amount allowable makes the section

          significant only for small claims. It should prove

          wholesome in its effect upon companies unreasonably

          withholding payment of such claims. It is doubtful if

          there are many judges who would allow such fees when the

          defense was bona fide although deemed inadequate." H.

          Havinghurst, Some Aspects of the Illinois Insurance Code,

          32 Ill. L. Rev. 391, 405 (1937).

     Since 1937, the statute has been amended several times. The

cap on attorney fees was raised to $1,000 in 1967. Ill. Rev. Stat.

1967, ch. 73, par. 767. In 1977, the legislature amended the

statute again, this time removing the cap on attorney fees entirely

and providing for the award of a penalty against the insurer. Ill.

Rev. Stat. 1977, ch. 73, par. 767. This award was limited to a

maximum of $5,000. In 1986, the statute was amended to its current

version. The maximum allowable penalty under the statute was raised

to $25,000.

     Before the statute was enacted, a policyholder's only recourse

was to seek a breach of contract action to receive the policy

proceeds. Attorney fees and punitive damages are generally not

available in breach of contract actions. Section 155 created a

limited statutory exception to this rule. It was intended to make

suits by policyholders economically feasible and to punish

insurers. UNR Industries, Inc., 607 F. Supp. at 866. By enacting

and amending the statute, the legislature has expanded plaintiff's

relief to include reasonable attorney fees, costs, and a limited

penalty, in addition to a breach of contract action to recover the

amount due under the policy. The legislature has steadily amended

the statute to allow an increasingly greater recovery for

unreasonable and vexatious insurer misconduct.

     Application of the statute was relatively straightforward

until Ledingham v. Blue Cross Plan for Hospital Care of Hospital

Service Corp., 29 Ill. App. 3d 339 (1975), rev'd on other grounds,

64 Ill. 2d 338 (1976). In Ledingham, the appellate court recognized

a tort action for bad faith and unfair dealing in connection with

the denial of a claim by an insurer. This was the first time the

tort of bad faith and unfair dealing was recognized in Illinois in

this context. In recognizing the existence of this tort, the

Ledingham court did not consider the impact, if any, of section 155

of the Insurance Code on this new tort of bad faith.

     The Ledingham court based its ruling on the implied covenant

of good faith and fair dealing that exists between contracting

parties. The appellate court first stated that a defendant may

engage in conduct that both breaches a contract and also

constitutes a separate and independent tort. Ledingham, 29 Ill.

App. 3d at 344. The appellate court then determined that breach of

the contractual covenant of good faith and fair dealing would also

constitute an independent tort in connection with an insurer's

denial of claims. Ledingham, 29 Ill. App. 3d at 350. Thus,

Ledingham elevated this implied contractual covenant to the status

of an independent tort.

     After Ledingham, appellate and federal panels have extensively

discussed the interaction between the statute and the tort of bad

faith. Although many of these courts have framed the issue as one

of preemption, the question of preemption is also intertwined with

the question of whether Illinois recognizes the tort of bad faith.

There has been considerable confusion in the courts concerning the

interaction of the statute and tort law.

     Some courts have rejected Ledingham and the tort of bad faith

entirely. See, e.g., Buais v. Safeway Insurance Co., 275 Ill. App.

3d 587 (1995); Perfection Carpet, Inc. v. State Farm Fire &

Casualty Co., 259 Ill. App. 3d 21 (1993); Tobolt v. Allstate

Insurance Co., 75 Ill. App. 3d 57 (1979); Debolt v. Mutual of

Omaha, 56 Ill. App. 3d 111 (1978); Ellis v. Metropolitan Property

& Liability Insurance Co., 600 F. Supp. 1 (S.D. Ill. 1982); Strader

v. Union Hall, Inc., 486 F. Supp. 159 (N.D. Ill. 1980). Others have

assumed the existence of the tort of bad faith and have concluded

that the statute preempts only a claim for punitive damages in

connection with the tort. See, e.g., Emerson v. American Bankers

Insurance Co., 223 Ill. App. 3d 929 (1992); Calcagno v.

Personalcare Health Management, Inc., 207 Ill. App. 3d 493 (1991);

Hoffman v. Allstate Insurance Co., 85 Ill. App. 3d 631 (1980);

Kohlmeier v. Shelter Insurance Co., 170 Ill. App. 3d 643 (1988);

W.E. O'Neil Construction Co. v. National Union Fire Insurance Co.,

721 F. Supp. 984 (N.D. Ill. 1989); American Dental Ass'n v.

Hartford Steam Boiler Inspection & Insurance Co., 625 F. Supp. 364

(N.D. Ill. 1985); Scheinfeld v. American Family Mutual Insurance

Co., 624 F. Supp. 698 (N.D. Ill. 1985); UNR Industries, Inc., 607

F. Supp. 855. Still others have held that the statute does not

preempt any tort action at all and that a plaintiff may pursue a

tort action alleging bad faith and seek punitive damages. Roberts

v. Western-Southern Life Insurance Co., 568 F. Supp. 536 (N.D. Ill.

1983); Kelly v. Stratton, 552 F. Supp. 641 (N.D. Ill. 1982).

Finally, several courts have held that the statute preempts a tort

action, regardless of the specific legal theory asserted, if the

complaint alleges nothing more than unreasonable and vexatious

conduct. See, e.g., Mazur v. Hunt, 227 Ill. App. 3d 785 (1992);

Combs v. Insurance Co., 146 Ill. App. 3d 957 (1986); Kush, 853 F.2d

1380; Zakarian v. Prudential Insurance Co. of America, 652 F. Supp.

1126 (N.D. Ill. 1987); Bageanis v. American Bankers Life Assurance

Co., 783 F. Supp. 1141 (N.D. Ill. 1992); York v. Globe Life &

Accident Insurance Co., 734 F. Supp. 340 (C.D. Ill. 1990).

                                    II

     As noted, the statute provides an extracontractual remedy for

policyholders who have suffered unreasonable and vexatious conduct

by insurers with respect to a claim under the policy. It

presupposes an action on the policy. As such, nothing in the

statute addresses tortious conduct or tort liability in general.

The statute simply provides an extracontractual remedy to an action

on a policy.

     As the Ledingham court correctly stated, a defendant may

engage in conduct that both breaches a contract and constitutes a

separate and independent tort. Kelsay v. Motorola, Inc., 74 Ill. 2d

172, 187 (1978). The statute provides an extracontractual remedy

for insurer misconduct that is vexatious and unreasonable. Well-

established tort actions, such as common law fraud, require proof

of different elements and remedy a different sort of harm than the

statute does. These torts address insurer misconduct that is not

merely vexatious and unreasonable. The statute was not intended to

insulate an insurer from such tort actions.

     Much of the confusion among the appellate and federal courts

arises from the interaction of the statute and the tort of bad

faith and unfair dealing. Unlike an action in fraud, a bad-faith

action involves insurer misconduct that is similar to unreasonable

and vexatious misconduct. This court, however, has never recognized

such a tort. We therefore determine, in light of the statute,

whether such a tort is recognized in Illinois.

     In Ledingham, the appellate court derived the tort of good

faith and fair dealing from contract law. This good-faith

principle, however, is used only as a construction aid in

determining the intent of contracting parties. See Martindell v.

Lake Shore National Bank, 15 Ill. 2d 272, 286 (1958) ("Every

contract implies good faith and fair dealing between the parties to

it, and where an instrument is susceptible of two conflicting

constructions, one which imputes bad faith to one of the parties

and the other does not, the latter construction should be

adopted"). This principle ensures that parties do not try to take

advantage of each other in a way that could not have been

contemplated at the time the contract was drafted or to do anything

that will destroy the other party's right to receive the benefit of

the contract. Capital Options Investment, Inc. v. Goldberg Brothers

Commodities, Inc., 958 F.2d 186, 189 (7th Cir. 1992); Vincent v.

Doebert, 183 Ill. App. 3d 1081, 1090 (1989). This contractual

covenant is not generally recognized as an independent source of

duties giving rise to a cause of action in tort. Beraha v. Baxter

Health Care Corp., 956 F.2d 1436, 1443 (7th Cir. 1992); Martin v.

Federal Life Insurance Co., 109 Ill. App. 3d 596, 605-07 (1982);

Anderson v. Burton Associates, Ltd., 218 Ill. App. 3d 261, 267

(1991).

     The use of the contractual covenant of good faith and fair

dealing to establish an independent tort arises from cases

involving the "duty to settle." See Ledingham, 29 Ill. App. 3d at

345-50; see generally S. Ashley, Bad Faith Liability §§1:01 through

1:13, at 1-48 (1987). These cases generally involve a policyholder,

a liability insurer, and a third party. The liability insurer has

assumed the policyholder's defense under the policy and is

negotiating a settlement with a third party. In the typical "duty

to settle" case, the third party has sued the policyholder for an

amount in excess of the policy limits but has offered to settle the

claim against the policyholder for an amount equal to or less than

those policy limits.

     In this circumstance, the insurer may have an incentive to

decline the settlement offer and proceed to trial. The insurer may

believe that it can win a verdict in its favor. In contrast, the

policyholder may prefer to settle within the policy limits and

avoid the risk of trial. The insurer may ignore the policyholder's

interest and decline to settle. This court has recognized that the

insurer has a duty to act in good faith in responding to settlement

offers. Krutsinger v. Illinois Casualty Co., 10 Ill. 2d 518, 527

(1957). When an insurer breaches this duty by refusing to settle,

the insurer may be liable for the full amount of a judgment against

the policyholder, regardless of policy limits. See Mid-America Bank

& Trust Co. v. Commercial Union Insurance Co., 224 Ill. App. 3d

1083, 1087 (1992); Phelan v. State Farm Mutual Automobile Insurance

Co., 114 Ill. App. 3d 96, 104 (1983); Edwins v. General Casualty

Co., 78 Ill. App. 3d 965, 968 (1979); Scroggins v. Allstate

Insurance Co., 74 Ill. App. 3d 1027, 1029 (1979).

     The "duty to settle" arises because the policyholder has

relinquished defense of the suit to the insurer. The policyholder

depends upon the insurer to conduct the defense properly. In these

cases, the policyholder has no contractual remedy because the

policy does not specifically define the liability insurer's duty

when responding to settlement offers. The duty was imposed to deal

with the specific problem of claim settlement abuses by liability

insurers where the policyholder has no contractual remedy. Debolt,

56 Ill. App. 3d at 115; see also National Union Fire Insurance Co.

v. Continental Illinois Corp., 673 F. Supp. 267, 270-72 (N.D. Ill.

1987) (distinguishing between "duty to settle" cases and section

155).

     This reasoning, however, does not apply to first-party claims

made directly by a policyholder against an insurer and which do not

involve liability insurance. The policyholder does not need a new

cause of action to protect him from insurer misconduct where an

insurer refuses to pay. The policyholder has an explicit

contractual remedy. He can sue for the proceeds due under the

policy. The extent of this remedy is controlled by contract law.

The fact that a policyholder cannot recover as much as he could in

tort arises from the fact that contract law imposes limitations on

recovery. See S. Ashley, Bad Faith Liability §§2:01 through 2:08,

at 55-73 (1987).

     The legislature has recognized that the contractual remedy may

not be sufficient and has provided for the award of an

extracontractual remedy. The primary benefit of the tort theory

developed in Ledingham is that it permits insured parties to

collect an extracontractual award in what essentially are breach of

contract actions, where attorney fees and punitive damages are

usually unavailable. Strader, 486 F. Supp. at 162. The legislature,

however, specifically enacted section 155 to deal with this lack of

an extracontractual remedy. The remedy provided by section 155

allows an extracontractual award and specifically defines the

limits of this award.

     This court has previously declined to recognize a new common

law tort where the legislature has passed a statutory scheme

providing a limited remedy. See Hall v. Gillins, 13 Ill. 2d 26

(1958) (declining to recognize a new common law action for wrongful

death where the legislature had created a limited wrongful death

remedy by statute); Cunningham v. Brown, 22 Ill. 2d 23 (1961)

(declining to recognize a new common law action for damages caused

by the negligent sale of liquor where the legislature had created

a limited statutory remedy by enacting the Dram Shop Act).

Similarly, in conjunction with a breach of contract action, section

155 provides the remedy to policyholders for insurer misconduct

that does not rise to the level of a well-established tort. In

addition, the legislature has constantly amended the statute to

allow greater recovery. We hesitate to recognize a new tort where

the legislature has constantly acted to remedy a perceived evil in

a certain area. See Hall, 13 Ill. 2d at 31-32 (noting that the

maximum recovery under the statute had steadily been increased);

see also Combs, 146 Ill. App. 3d at 962-63.

     To allow a bad-faith action would transform many breach of

contract actions into independent tort actions. Martin, 109 Ill.

App. 3d at 605-07. A duty of good faith and fair dealing would be

tortiously violated whenever one party takes an action designed to

deprive the other of the benefits of the agreement. A bad-faith

action would encourage plaintiffs to sue in tort, and not breach of

contract, to avoid suit limitation clauses and the cap on the

statutory remedy. Hall and Cunningham indicate that "when the

legislature has provided a remedy for a heretofore unremedied evil,

the courts should not allow an end-run around the limits imposed by

that statute by creating a common-law action that remedies the same

basic evil." UNR Industries, Inc., 607 F. Supp. at 864.

     In summary, an insurer's conduct may give rise to both a

breach of contract action and a separate and independent tort

action. Kelsay, 74 Ill. 2d at 187. Mere allegations of bad faith or

unreasonable and vexatious conduct, without more, however, do not

constitute such a tort. Courts therefore should look beyond the

legal theory asserted to the conduct forming the basis for the

claim. Kush, 853 F.2d at 1385; Zakarian, 652 F. Supp. at 1136;

Combs, 146 Ill. App. 3d at 963-64. In cases where a plaintiff

actually alleges and proves the elements of a separate tort, a

plaintiff may bring an independent tort action, such as common law

fraud, for insurer misconduct.

                                    III

     With these principles in mind, we consider the allegations in

the complaint. The complaint is inartfully drafted and filled with

conclusory language. We ignore this conclusory language and

consider the alleged conduct to determine if plaintiff alleges

anything more than bad faith. Plaintiff alleges that the insurer

never sent him a notice of cancellation. Plaintiff alleges that the

insurer fabricated the notice of cancellation solely to deny his

claim under the policy. Plaintiff seeks the proceeds due him under

the policy.

     In order to state a cause of action for common law fraud, the

essential elements of fraud must be pleaded with specificity. See

Talbert v. Home Savings of America, F.A., 265 Ill. App. 3d 376, 382

(1994); In re Marriage of Shaner, 252 Ill. App. 3d 146, 157 (1993);

Trautman v. Knights of Columbus, 121 Ill. App. 3d 911, 914 (1984).

The elements that must be alleged include: "(1) a false statement

of material fact; (2) the party making the statement knew or

believed it to be untrue; (3) the party to whom the statement was

made had a right to rely on the statement; (4) the party to whom

the statement was made did rely on the statement; (5) the statement

was made for the purpose of inducing the other party to act; and

(6) the reliance by the person to whom the statement was made led

to that person's injury." Siegel v. Levy Organization Development

Co., 153 Ill. 2d 534, 542-43 (1992).

     Here, the complaint is barren of any allegations of reliance.

Instead, plaintiff alleges that the insurer is lying after the fact

to avoid paying his claim. Essentially, plaintiff alleges that the

insurer is trying to deny him the benefits of the policy. See

Mazur, 227 Ill. App. 3d 785 (allegations that the insurer refused

in bad faith to pay for two items not included on a proof of loss

form was not sufficient to allege fraud). Plaintiff did not allege

that he acted in reliance on any statement by the insurer. See

Trautman, 121 Ill. App. 3d 911 (allegations that the insurer forged

an amendment to the policy and in bad faith deprived the plaintiff

of insurance proceeds did not contain allegation of reliance on the

amendment); Kinney v. St. Paul Mercury Insurance Co., 120 Ill. App.

3d 294 (1983) (allegations that the insurer made an estimate for

repairs in bad faith in connection with a settlement offer did not

contain allegation of reliance).

     The insurer based its motion for summary judgment on the one-

year limitation provision contained in the policy. Summary judgment

is appropriate where the pleadings, depositions, and admissions on

file, together with the affidavits, demonstrate that there is no

genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law. 735 ILCS 5/2--1005(c)

(West 1994); First of America Bank, Rockford, N.A. v. Netsch, 166

Ill. 2d 165, 176 (1995). The review of a summary judgment ruling is

an issue of law and our review is therefore de novo. Busch v.

Graphic Color Corp., 169 Ill. 2d 325, 333 (1996).

     At best, plaintiff alleges a breach of contract action. The

policy provides that a suit on the policy must be brought within

one year of loss. The Insurance Code provides that the limitation

period is tolled by the number of days between the date when a

proof of loss is submitted and the date when the claim is denied.

215 ILCS 5/143.1 (West 1994). Compliance with the suit limitation

provision of the policy is a condition precedent to recovery under

a policy. See Schoonover v. American Family Insurance Co., 214 Ill.

App. 3d 33, 44 (1991). The loss occurred on January 9, 1992, and

plaintiff's claim was denied on May 22, 1992. Plaintiff's suit was

filed on October 19, 1993. Even assuming the limitation provision

was tolled until plaintiff's claim was denied by the insurer on May

22, the suit, which was filed more than 16 months later, was

untimely. The fatal flaw with plaintiff's action is simply that he

waited too long to file it.

     In light of the foregoing analysis, we need not further

address the second certified question, concerning whether a suit

limitation provision applies to common law fraud actions.

                                CONCLUSION

     Section 155 does not preempt a claim of insurer misconduct

based on a separate and independent tort. Mere allegations of bad

faith or unreasonable and vexatious conduct, however, are not

sufficient to constitute a separate and independent tort.

Plaintiff's breach of contract action is untimely under the policy.

Accordingly, we reverse the judgments of the appellate and circuit

courts and remand the cause to the circuit court of Knox County

with directions to enter summary judgment in favor of the insurer.

Appellate court judgment reversed;

                                         circuit court judgment reversed;

                                          cause remanded with directions.

                                                                         

     JUSTICE FREEMAN, specially concurring:

     I agree with the majority that summary judgment was proper

based on the fact that the plaintiff's suit was barred by the

insurance policy's limitations provision. I cannot agree with the

majority's reasoning regarding the preemptive scope of section 155,

or the present status in Illinois of the tort of insurer bad faith

and unfair dealing. Based on my examination of section 155, and a

host of state and federal decisions, I am convinced that the tort

of bad faith and unfair dealing is long established in Illinois and

should remain so, section 155 notwithstanding.

     Moreover, I believe it is unfortunate that the majority has

seen fit to render a decision in this area, a decision arguably

adverse to the interests of small policyholders, without the

benefit of substantial briefs from that quarter. I note that the

plaintiff's pro se appellate brief consists of a single letter to

this court merely arguing that his claim for fraud be allowed so as

to deter insurers from engaging in deceptive and vexatious conduct

in settling claims.

     Ironically, that misfortune only highlights why a tort cause

of action for insurer bad faith is necessary even in the realm of

first-party coverage claims. Insureds are often at a bargaining

disadvantage with their insurers. Thus, insurers have been found to

fail to adequately investigate claims or deny claims without

adequate supporting evidence; fail to evaluate claims objectively,

interpreting policy provisions in an arbitrary and unreasonable

manner; make unreasonably low settlement offers; rely on minor

misrepresentations in the insurance application or where their

agents knowingly complete false applications; or exert coercion

designed to compel compromise of a claim. See Emerson v. American

Bankers Insurance Co., 223 Ill. App. 3d 929, 936 (1992), citing

Annot., 33 A.L.R.4th 579 (1984).

     That said, I turn to the majority's reasoning. The majority

concludes that section 155 does not preempt a separate and

independent tort involving insurer misconduct such as fraud. Slip

op. at 4, 12. The majority finds that a first-party claim alleging

insurer bad faith and unfair dealing is not within that category.

"Mere allegations of bad faith or unreasonable and vexatious

conduct, without more, however, do not constitute such a tort."

Slip op. at 12. One problem with this reasoning, however, is that,

contrary to the majority's view of the issue, a claim for third-

party insurer bad faith and unfair dealing does not come within

this category, either. Contrary to the majority's statements,

third-party coverage claims for bad faith are based, like first-

party claims, on an implied duty arising from the insurance

contract. See Olympia Fields Country Club v. Bankers Indemnity

Insurance Co., 325 Ill. App. 649, 662 (1945); Cernocky v. Indemnity

Insurance Co. of North America, 69 Ill. App. 2d 196, 206 (1966);

Scroggins v. Allstate Insurance Co., 74 Ill. App. 3d 1027 (1979);

Twin City Fire Insurance Co. v. Country Mutual Insurance Co., 23

F.3d 1175, 1178 (7th Cir. 1994) ("that duty [good faith] is founded

on the insurance contract itself").

     Furthermore, it is simply not true, as the majority asserts,

that the good-faith "principle" is used only as a construction aid

in determining the intent of contracting parties. Slip op. at 9. It

is well established that an insurance contract is one of adhesion.

To that extent, the relationship of insured and insurer has

elements reflective of a fiduciary relationship, and also bears the

obligations attendant to that relationship. It is therefore

incorrect for the majority to contend that good faith is no more

than an aid to construal of a contract.

     As such, third-party bad-faith claims are no more separate and

independent tort actions than are such claims in the first-party

context. Moreover, this court has recognized that an insurer has an

implied duty to act in good faith towards insureds with regards to

settlement. Krutsinger v. Illinois Casualty Co., 10 Ill. 2d 518,

527-28 (1957). Notably, Ledingham v. Blue Cross Plan for Hospital

Care of Hospital Service Corp., 29 Ill. App. 3d 339 (1975), relied

on the existence of this same implied-in-law duty of good faith and

fair dealing in the context of a first- party coverage claim. This

court then later approvingly cited Ledingham for the proposition

that the same conduct may both breach a contract as well as

constitute a separate and independent tort. Kelsay v. Motorola,

Inc., 74 Ill. 2d 172, 187 (1978).

     Thus, the distinction that the majority seeks to draw between

bad-faith claims in the first-party context and those in the third-

party context does not withstand scrutiny. If bad-faith claims must

fall in one area, because they are essentially creatures of

contract, so must they fall in the other area. We thus swiftly

approach the "slippery slope."

     Furthermore, section 155, entitled "Attorney fees," speaks

primarily to what statutory remedies are recoverable under the

provision. The provision's language presumes the existence of

either a coverage dispute, whether first or third party, a claims

payment dispute, a loss payable dispute, or a delay in claims

settlement. 215 ILCS 5/155 (West 1994). Such claims can encompass

more than a breach of the insurance contract, and indeed, the

provision is applied in fact to a broad range of claims against

insurer. See W.E. O'Neil Construction Co. v. National Union Fire

Insurance Co., 721 F. Supp. 984 (N.D. Ill. 1989) (refusal to

contribute to settlement); Keepes v. Doctors Convalescent Center,

Inc., 89 Ill. App. 2d 36 (1967) (refusal to pay insured's

creditors); Phillips v. Inter-Insurance Exchange of the Chicago

Motor Club, 91 Ill. App. 3d 198 (1980) (auto liability insurer's

refusal to stack med pay coverage).

     Consequently, I believe the preemptive scope of section 155 is

more appropriately distinguishable on the basis of the statutory

remedies it provides, rather than on whether the conduct is

independently based in tort or contract. Thus, I adhere to that

increasing trend of majority opinions which hold that section 155

preempts attorney fees and punitive damages, but not compensatory

damages. W.E. O' Neil Construction Co., 721 F. Supp. at 998;

Chicago HMO v. Trans Pacific Life Insurance Co., 622 F. Supp. 489

(N.D. Ill. 1985); Calcagno v. Personalcare Health Management, Inc.,

207 Ill. App. 3d 493 (1991); Kohlmeier v. Shelter Insurance Co.,

170 Ill. App. 3d 643 (1988); McCall v. Health Care Service Corp.,

117 Ill. App. 3d 107 (1983); Lynch v. Mid-America Fire & Marine

Insurance Co., 94 Ill. App. 3d 21 (1981); Hoffman v. Allstate

Insurance Co., 85 Ill. App. 3d 631 (1980); Schienfield v. American

Family Mutual Insurance Co., 624 F. Supp. (N.D. Ill. 1985);

American Dental Ass'n v. Hartford Steam Boiler Inspection &

Insurance Co., 625 F. Supp. 364 (N.D. Ill. 1985); UNR Industries,

Inc. v. Continental Insurance Co., 607 F. Supp. 855 (N.D. Ill.

1984); see also Kaniuk v. Safeco Insurance Co., 142 Ill. App. 3d

1070 (1986) (leaving question open as to compensatory damages);

Debolt v. Mutual of Omaha, 56 Ill. App. 3d 111 (1978) (same).

     In general, several factors support these decisions. For one,

as mentioned, section 155 specifically addresses attorney fees,

costs of the action, and limited penalties. No mention is made in

the provision of any compensatory remedies and, indeed, the

provision is premised on the very existence of a "core" action

against an insurer. See UNR Industries, 607 F. Supp. at 866

(language expressed belies intention to address problem of

compensating insured for damages sustained). Further, this core

action is not limited in terms of its legal basis, but only in

terms of the factual nature of the alleged insurer misconduct.

Second, it was not until 1977, two years following the Ledingham

decision, that the legislature amended the statute to include

specific limited penalties in addition to attorney fees. Thus, it

may also be wrong to discount Ledingham, which only expanded bad-

faith recovery beyond third-party coverage claims to punitive

damages in the area of first-party coverage claims, for failing to

mention section 155. See Kinney v. St. Paul Mercury Insurance Co.,

120 Ill. App. 3d 294, 298 (1983). At the time that Ledingham was

decided, section 155 did not include penalties per se and, thus,

the provision posed no potential conflict with and was, therefore,

inapplicable to the Ledingham analysis. See Emerson, 223 Ill. App.

3d at 935; but see American Dental, 625 F. Supp. at 368 (provision

was at least punitive in nature at enactment). Additionally, I note

that many of the cases which later discounted Ledingham suffer from

inconsistencies in their own approach (see UNR Industries, 607 F.

Supp. at 867), or they either simply cite precedent without

engaging in analysis.

     Also, close examination of the legislative history of section

155 reveals that there was no legislative intent that the provision

cover compensatory claims. See UNR Industries, 607 F. Supp. 855.

Furthermore, the Hall/Cunningham preemption analogy relied on by

the majority does not diminish the strength of these several

factors because subsequent authorities have shown that that

preemption analogy is incomplete. See Barr Co. v. Safeco Insurance

Co. of America, 583 F. Supp. 248, 255 (N.D. Ill. 1984)

     Finally, even the majority recognizes the utility of a bad-

faith tort cause of action in the realm of third-party coverage.

Slip op. at 10-11. Insureds may be exposed to damages beyond the

value of their contract, and for which, otherwise, they may not

recover. I am not at all convinced, as is apparently the majority,

that the same reasoning fails to hold sway within the context of

first-party coverages simply because an insured there can sue for

proceeds due under the policy and seek attorney fees and penalties

for insurer misconduct limited to $25,000. I can easily conceive of

scenarios where, for instance, a small homeowner insured places

trust in his first-party coverage property insurer to his detriment

at a cost far beyond contract compensatory damages and the

provision's limited statutory penalties. It makes no sense, in

terms of the balance of society's interests, that an small policy

insured may have sufficient remedies in one instance, but not in

the other.

     As a final matter, I would hold, contrary to the majority's

reasoning, that the suit limitation clause here applies to bar

plaintiff's attempted fraud action. The clause refers to actions

against the insured and is not limited to only actions upon the

policy. As a result, this alleged action, whether sounding in

fraud, contract, or bad faith, does not survive the bar. 

     JUSTICE HARRISON, dissenting:

     The majority has made a basic analytical error that is

probably inadvertent but certainly unfair.

     The issue before the circuit and appellate courts was whether

plaintiff's pro se claim against its insurer for common law fraud

was preempted by section 155 of the Illinois Insurance Code (215

ILCS 5/155 (West 1994)) or time-barred by a limitations provision

contained in the insurance policy. This issue was raised in the

context of a motion for summary judgment under section 2--1005 of

the Code of Civil Procedure (735 ILCS 5/2--1005 (West 1994)), and

both the circuit and appellate courts concluded that neither the

Code section nor the contractual limitations provision defeated

plaintiff's claim. Accordingly, the circuit court denied summary

judgment, and the appellate court affirmed on a Rule 308 appeal

(155 Ill. 2d R. 308).

     My colleagues now reverse and remand with directions to enter

summary judgment in favor of the insurer. That decision, however,

has nothing to do with the lower courts' reasoning. The majority

agrees that section 155 of the Code does not preempt a common law

fraud claim, and they decline to reach the limitations question.

The reason my colleagues believe that summary judgment should be

entered in favor of the insured on plaintiff's common law fraud

claim is simply that the allegations in plaintiff's complaint are

insufficient to state such a claim.

     The problem with this approach is that it overlooks how

summary judgment is supposed to work. Contrary to the majority's

apparent belief, summary judgment cannot be used to challenge the

sufficiency of a plaintiff's complaint. The reason is simple. As

this court has repeatedly held, a motion for summary judgment

assumes that a cause of action has been stated. Delgatto v. Brandon

Associates, Ltd., 131 Ill. 2d 183, 190 (1989); Janes v. First

Federal Savings & Loan Ass'n, 57 Ill. 2d 398, 406 (1974). If the

existence of a valid cause of action is assumed by the motion,

granting the motion on the theory that a cause of action has not

been properly stated, as the majority does here, is illogical.

     Although we can affirm the judgment of a lower court on any

grounds called for by the record (Leonardi v. Loyola University,

168 Ill. 2d 83, 97 (1995)), we should be reluctant to reverse for

reasons that were not raised below, and the logical inconsistency

of the majority's opinion is a good illustration of why that is so.

What makes the majority's mistake especially troublesome to me is

that it has left the plaintiff with no means for salvaging his

case. This is not a situation where the plaintiff elected to stand

on his pleadings after they were dismissed by the trial court. As

previously noted, the sufficiency of the pleadings did not become

an issue until now, and until now, the plaintiff had no reason to

believe that his common law fraud allegations required

modification. Now that the pleading defects cited by the majority

have been brought to the plaintiff's attention, there is every

reason to believe that he would be able to cure them if given the

opportunity.

     By remanding with directions to enter judgment in favor of the

insurer, the majority has denied plaintiff that opportunity. Such

a result is incompatible with the principle that a cause of action

should not be dismissed on the pleadings unless it is clearly

apparent that no set of facts can be proven which would entitle a

plaintiff to relief. Grzeszczak v. Illinois Farmers Insurance Co.,

168 Ill. 2d 216, 223 (1995). If, by amendment, a plaintiff can

state a cause of action, a case should not be dismissed with

prejudice on the pleadings. Bowe v. Abbott Laboratories, Inc., 240

Ill. App. 3d 382, 389 (1992).

     The majority's result likewise contravenes the summary

judgment statute. Subsection (g) of that statute expressly

provides:

               "Before or after the entry of a summary judgment,

          the court shall permit pleadings to be amended upon just

          and reasonable terms." 735 ILCS 5/2--1005(g) (West 1994).

Under my colleagues' analysis, this statutory right to amend has

been nullified.

     A situation similar to the one present here was addressed by

the appellate court in Sinclair v. State Bank, 226 Ill. App. 3d 909

(1992). There, the circuit court refused to dismiss the plaintiff's

complaint, but on a Rule 308 appeal (134 Ill. 2d R. 308), the

appellate court reversed, holding that the trial court should have

dismissed plaintiff's complaint on the pleadings. No remand was

ordered. When the plaintiff subsequently attempted to amend his

complaint in the circuit court to cure the pleading defects, the

defendant objected, arguing that the appellate court's reversal,

without remand, constituted an adjudication on the merits, leaving

the trial court without power to take further action in the case.

      Although the trial court agreed with the defendant, the

appellate court subsequently reversed. It held that where a

defendant brings a Rule 308 appeal involving pleadings that were

not dismissed on the trial level and the complaint is found to be

fatally deficient for the first time on that appeal, the plaintiff

should still be allowed to amend his complaint "unless the Rule 308

appellate opinion necessarily forecloses all theories of recovery."

226 Ill. App. 3d at 915.

     The majority's disposition here clearly does not foreclose all

theories of recovery. It merely holds that the existing pleadings

are inadequate to state a cause of action. For the reasons set

forth above, the court is therefore wrong to reverse and remand

with directions that judgment be entered in favor of the insurer.

Plaintiff should be afforded the chance to plead again.

Accordingly, I dissent.

     CHIEF JUSTICE BILANDIC joins in this dissent.